64 F.3d 1230
 40 Cont.Cas.Fed. (CCH) P 76,825
 FGS CONSTRUCTORS, INC., Appellant,
v.
Michael CARLOW, doing business as Carlow Enterprises;
Carole Oberlitner; Carl Oberlitner; United
States of America; Bureau of Indian
Affairs, Appellees.
 No. 95-1164.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1995.
Decided Sept. 5, 1995.
 
 George E. Grassby, Rapid City, SD, argued for Carl and Carole Oberlitner.
 Jennifer H. Zacks, Asst. Atty. Gen., Washington, DC, argued (Barbara Biddle, on the brief), for U.S.
 Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.
 BRIGHT, Senior Circuit Judge.
 
 I. INTRODUCTION
 
 1
 FGS Constructors, Inc. (FGS) appeals the district court's granting of summary judgment in favor of the United States. In addition, FGS appeals the district court's granting of Michael Carlow's, Carole Oberlitner's and Carl Oberlitner's motions to dismiss, and denying FGS's motions to amend its complaint and to extend discovery. For the reasons that follow, we affirm in part and reverse in part.
 
 II. BACKGROUND
 
 2
 This case arises from a renovation project of the White Clay Dam located on the Pine Ridge Indian Reservation. In 1989, the United States, through the Bureau of Indian Affairs (BIA), agreed to provide funding to the Oglala Sioux Tribe (Tribe) for repairs to the White Clay Dam, pursuant to the Indian Self-Determination and Education Assistance Act (ISDEAA). The Tribe contracted with Cooper Consultants, Inc. (CCI) to be the project engineer, and Michael Carlow d/b/a Carlow Enterprises (Carlow) to be the general contractors. These contracts were approved by the government. Carl and Carole Oberlitner provided Carlow with a surety bond pursuant to the Miller Act, 40 U.S.C. Sec. 270a-d, guaranteeing Carlow's performance on the contract.
 
 
 3
 Carlow then hired FGS as a subcontractor to perform mechanical and structural work on the dam. FGS's responsibility was to perform the key repair and reconstruction work on the dam gates and spillway. FGS claims that problems arose during the performance of their contract. Generally, FGS asserts that the BIA and CCI failed to perform their obligation of draining the dam which prevented FGS from performing its subcontract work on time and materially raised FGS's costs. FGS subsequently suspended work and requested payment for the work already performed. FGS claims that they have not been paid in full for the work that they have already performed.
 
 
 4
 FGS then brought a diversity action in federal district court against Carlow for breach of contract, against Carl and Carole Oberlitner for enforcement of Miller Act bonds, and against the government for negligence based on its violation of federal statutes and regulations and for the imputed negligence of CCI under the Federal Tort Claims Act (FTCA).
 
 
 5
 The district court issued two separate orders relevant to this appeal. First, the district court dismissed the contract action against Carlow and the Oberlitners on the grounds of comity and failure to exhaust tribal court remedies. Second, the district court granted summary judgment in favor of the United States, determining that the contract between CCI and the Tribe was not a self-determination contract and that CCI was not an "Indian contractor" within the meaning of the ISDEAA. Therefore, the district court determined that the United States was not liable for CCI's alleged negligent performance.
 
 
 6
 Additionally, FGS filed a motion to amend the complaint one and a half years after the original complaint was filed. The district court denied FGS's motion to amend on the grounds that it would increase the scope and complexity of the issues involved, require the parties to essentially start discovery from the beginning, severely prejudice the government and unduly delay the case.
 
 
 7
 This appeal followed.
 
 III. DISCUSSION
 
 8
 A. Claims Against Carlow and the Oberlitners
 
 
 9
 The district court granted Carlow's and the Oberlitners' motions to dismiss. In granting the motions, the district court determined that due to comity concerns, FGS must first exhaust any tribal court remedies it had against Carlow and the Oberlitners. The district court concluded that, because this case arose out of a construction contract on the Pine Ridge Indian Reservation, with Indian and non-Indian parties, respect for the sovereignty retained by the Tribe dictates that the tribal courts be given the opportunity in the first instance to address FGS's claims. In addition, the district court ruled that Carlow and the Oberlitners waived the Miller Act venue requirement,[1] requiring suits in the federal court to be brought in the district in which the contract was to be performed and executed, by the language of the dispute resolution clause in the contract.
 
 
 10
 FGS concedes that the district court correctly concluded that federal venue could be waived by a valid forum selection clause or a dispute resolution clause in a contract. FGS argues, however, that no waiver occurred in the contract, or subcontract, in this case.
 
 
 11
 The contract between Carlow and FGS contained the following dispute resolution clause: "In the event there is any dispute between the parties arising out of this agreement, it shall be determined in the Oglala Sioux Tribal Court or other court of competent jurisdiction." App. at 193. FGS argues that the phrase "or other court of competent jurisdiction" expanded the venue options to include the federal district court in addition to the tribal court. FGS contends that pursuant to In re Fireman's Fund Ins. Co., 588 F.2d 93 (5th Cir.1979), this contract clause should be enforced unless the appellees show that enforcement would be unreasonable under the circumstances.
 
 
 12
 We do not agree with the district court's determination that FGS must first exhaust its remedies in the tribal court. The contracting parties agreed that a plaintiff could sue either in the federal district court of South Dakota (a court of competent jurisdiction) or in the tribal court. By this forum selection clause, the Tribe agreed that disputes need not be litigated in tribal court. The district court, therefore, had no significant comity reason to defer this Miller Act litigation first to the tribal court. Indeed, while we agree with the district court that a federal court does not have exclusive jurisdiction over these Miller Act claims, it nevertheless is the usual forum for such claims and has a significant interest in determining the merits of the action.
 
 
 13
 The district court determined that the venue provision of the Miller Act, Section 270b(b), was a venue provision enacted for the benefit of defendants, like Carlow and the Oberlitners. The district court stated that "[f]ederal courts following the holding in F.D. Rich Co., 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974) have held the statute to constitute a waiveable venue requirement and have recognized that the provision was enacted for the benefit of defendants in Miller Act actions. See In re Fireman's Fund Ins. Co., 588 F.2d 93, 94-95 (5th Cir.1979) (holding that the Miller Act venue requirement, enacted for the benefit of defendants, can be waived by a valid forum selection clause in a contract); ..." Dist. Ct. Opinion dated March 4, 1993, at 6. The district court concluded that because Carlow and the Oberlitners moved to dismiss the federal claims against them, they had, in effect, waived any right to litigate the Miller Act case in federal court.
 
 
 14
 We disagree with this analysis. While the Miller Act venue requirement, requiring suits to be brought in the district where the contract was to be performed, served to benefit defendants and could be waived by defendants, these rules and requirements have no relevance to this issue. No provision in the agreement gave these defendants the right to override a plaintiff's choice of forum under the forum selection clause. Since Carlow and the Oberlitners agreed to be sued in the federal district court of South Dakota, those defendants are not privileged to force the dispute into the tribal court. Accordingly, we reverse the district court's order granting Carlow's and the Oberlitners' motions to dismiss.
 
 B. Claims Against the United States
 
 15
 We review the granting of summary judgment de novo, applying the same standard as the district court. Dillaha v. Yamaha Motor Co., 23 F.3d 1376, 1377 (8th Cir.1994). Summary judgment is appropriate if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
 
 
 16
 The district court granted summary judgment in favor of the government and against FGS, concluding that the United States was not liable for the alleged negligent performance of the self-determination contract by CCI. The district court determined that in order for FGS to impute CCI's negligence to the government pursuant to this act, FGS has to prove two elements: 1) that the contract between the Tribe and CCI was a self-determination contract under the ISDEAA; and 2) that CCI was an Indian contractor. The district court ruled that FGS failed to prove both of these elements.
 
 
 17
 FGS contends that under the ISDEAA, specifically Pub.L. No. 101-512, Title III, Sec. 314, 104 Stat.1959 (codified at 25 U.S.C. Sec. 450f notes (Supp. IV 1992)), the government is liable for the alleged negligence of CCI because any claim against a tribe is deemed to be a claim against the United States. FGS argues that the district court erred, and the United States is liable for CCI's negligent performance of the self-determination contract because the contract was not simply "attached," but by express modification was included and became a component of the self-determination contract. FGS claims that the United States was statutorily liable for CCI's negligent performance of the self-determination contract because CCI was an Indian contractor as described in the Indian Self-Determination and Education Assistance Act. We disagree.
 
 ISDEAA, Sec. 314 provides in part:
 
 18
 With respect to claims resulting from the performance of functions ... under a contract, grant agreement, or cooperative agreement authorized by the Indian Self-Determination and Education Assistance Act ... an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior ... while carrying out any such contract or agreement and its employees are deemed employees of the Bureau ... while acting within the scope of their employment in carrying out the contract or agreement: Provided, That after September 30, 1990, any civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and be afforded the full protection and coverage of the Federal Tort Claims Act....
 
 
 19
 (Emphasis added) Pub.L. No. 101-512, Title III, Sec. 314, 104 Stat.1959 (codified at 25 U.S.C. Sec. 450f notes).
 
 
 20
 The ISDEAA promotes the long-standing federal policy of encouraging Indian self-determination, giving Indian tribes control over the administration of federal programs benefiting Indians. Under a self-determination contract, the federal government supplies funding to a tribal organization, allowing the tribal organization to plan, conduct and administer a program or service that the federal government otherwise would have provided directly. 25 U.S.C. Sec. 450f, b(j).
 
 
 21
 In 1988, Congress amended the ISDEAA to allow recovery under the Federal Tort Claims Act for certain claims arising out of the performance of self-determination contracts. Congress acknowledged that the tribal governments, when carrying out self-determination contracts, were performing a federal function and that a unique legal trust relationship existed between the tribal government and the federal government in these agreements. Because of this relationship, Congress concluded that the federal government must provide liability insurance to the tribal government for self-determination contracts.
 
 
 22
 We agree with the district court's determination that CCI is not an Indian contractor under Sec. 314. The ISDEAA limits the application of FTCA coverage to tort "claims resulting from the performance of functions ... under a contract, grant agreement, or cooperative agreement authorized by the Indian Self-Determination and Education Assistance Act of 1975." Pub.L. No. 101-512, Sec. 314, 104 Stat.1959. The Act specifies that "a contract ... entered into [part A of the ISDEAA] between a tribal organization and the appropriate Secretary for the planning, conduct, and administration of programs or services ... otherwise provided to Indian tribes and their members pursuant to Federal law" is a self-determination contract. 25 U.S.C. Sec. 450b(j). Thus, by definition, the ISDEAA does not contemplate that a private party such as CCI can enter into a self-determination contract. As the district court explained, the purpose and policy of the ISDEAA are best served if the term "Indian contractor" is limited to a tribe-related organization that may itself enter into a self-determination contract, not a private party such as CCI that has been retained to work on a project funded by a self-determination contract. Thus, CCI is not an "Indian contractor" within the meaning of Sec. 314.
 
 
 23
 FGS also argues that the district court erred by denying its motion for leave to amend its complaint and by denying its request to reopen discovery. FGS sought to amend its complaint to include a contract action against the United States, reurge original district court jurisdiction over the contract claims against Carlow and the Oberlitners, and add CCI and the Tribe as named defendants in contract and negligence claims under the Miller Act, the FTCA, and the ISDEAA.
 
 
 24
 Whether to grant leave to amend pleadings lies within the sound discretion of the district court. Fuller v. Secretary of Defense, 30 F.3d 86, 88 (8th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 583, 130 L.Ed.2d 497 (1994). Here, the district court's denial of FGS's motions to amend its complaint and to reopen discovery was well within its discretion. FGS's motions were filed approximately one and a half years after the original complaint was filed. Although the district court extended discovery several times, FGS's motions were filed almost two months after the discovery cut-off date and several weeks after the court's cut-off date for filing such motions. Therefore, we determine that the district court did not abuse its discretion in denying FGS's requests to amend its complaint and to extend discovery.
 
 IV. CONCLUSION
 
 25
 Accordingly, we reverse the district court's granting of Carlow's and the Oberlitners' motions to dismiss. In addition, we affirm the district court's granting of summary judgment in favor of the United States and its denial of FGS's motions to amend its complaint and to extend discovery.
 
 
 
 [1]
 Section 270b of the Miller Act provides:
 Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him. The United States shall not be liable for the payment of any costs or expenses of any such suit.
 40 U.S.C. Sec. 270b(b) (1988).