TAYLOR, Judge.
The Seminole Tribe of Florida (Tribe) appeals from a final order rendered by the State of Florida, Department of Revenue, revoking its consumer certificate of exemption from sales and use taxation. Because we find that the Tribe operates as a federal instrumentality when making purchases in the conduct of its governmental and reservation affairs, we conclude that the Tribe meets the statutory criteria for exemption under Section 212.08(6), Florida Statutes (1995). We reverse the order entered in the administrative proceedings below and direct reinstatement of the Tribe’s consumer certificate of exemption.
The Department of Revenue (Department) is an agency of the State of Florida authorized to assess, enforce, and collect taxes and *1118 to issue consumer certificates of exemption pursuant to Chapter 212, Florida Statutes. On May 13, 1987, the Department issued a consumer certificate of exemption from sales and use taxation to the Seminole Tribe. The certificate was issued pursuant to Section 212.08(6), Florida Statutes, which provides in pertinent part:
There are also exempt from the tax imposed by this chapter sales made to the United States Government, a state, or any county, municipality, or political subdivision of a state when payment is made directly to the dealer by the governmental entity.[1]
The Seminole Tribe of Florida (Tribe) is a federally recognized tribe under the Indian Reorganization Act of 1934, as amended, 25 U.S.C. § 476. The Department issued the certificate to the Tribe based upon its recognition of the Tribe’s status as a “federal instrumentality.” By its terms, the certificate expired in May of 1992. When the Tribe applied to renew the certificate in March, 1992, the Department refused to renew it, and, instead, issued an administrative complaint on June 28,1996 seeking to revoke the certificate. Upon reviewing the Tribe’s legal status, the Department determined that the consumer certificate was originally issued in error. It concluded that the Tribe did not meet the statutory requirements for an exemption and no longer qualified for it.[2] However, the Department continued to honor the certificate after the expiration date pending the outcome of the administrative proceedings.
The Tribe opposed the revocation of the consumer certificate of exemption and argued that its off-reservation purchases of goods, services, equipment and supplies from vendors are for the Tribe’s on-reservation use in the conduct of its governmental and reservation affairs, as contemplated by the statutory exemption under Section 212.08(6). The Tribe contended that it is entitled to an exemption from state sales and use taxes because of its status as a political subdivision or an instrumentality of the federal government. Its status, it claimed, derives from numerous contracts, grants, and cooperative agreements with the federal government, in particular, the United States Department of the Interior and the U.S. Department of Health and Human Resources, to provide services which would otherwise be provided by the federal government, in accordance with the Indian Self-Determination and Education Assistance Act (ISDEAA or Act).[3] During the administrative hearing, the Tribe presented numerous witnesses to show that the vast majority of its purchases are made in connection with ISDEAA or “self-determination” contracts, under which the Tribe is expressly acting as an instrumentality and political subdivision of the federal government. Pursuant to these contracts with the federal government, the Tribe operates programs and carries out obligations of the federal government to provide tribal services such as law enforcement, health care, education, and real estate assistance.
The Congressional declaration of policy as to self-determination contracts, contained in 25 U.S.C. section 450a (b) (Supp.1997), states:
The Congress declares its commitment to the maintenance of the Federal Government’s unique and continuing relationship with, and responsibility to, individual Indian tribes and to the Indian people as a whole through the establishment of a meaningful Indian self-determination policy which will permit an orderly transition from the Federal domination of programs for, and services to, Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services. In accordance with this policy, the United States is committed to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality *1119 programs and developing the economies of their respective communities.
We note that this policy contemplates a special relationship between Indian tribes and the federal government whereby Indian self-determination is promoted through relinquishing control over the administration of federal programs benefitting Indians to Indian tribes. Under a self-determination contract, the federal government supplies funding to a tribal organization, allowing the tribal organization to plan, conduct, and administer a program or service that the federal government otherwise would have provided directly. Certain provisions of the ISDEAA expressly declare that Indian tribes are considered part of the federal government when carrying out self-determination contracts. In 1988, Congress amended the ISDEAA to allow recovery under the Federal Tort Claims Act for claims arising from the performance of functions under self-determination contracts. 25 U.S.C. section 450 f(d) states that for purposes of the Federal Tort Claims Act, 42 U.S.C. section 233:
an Indian tribe, a tribal organization or Indian contractor carrying out a contract, grant agreement, or cooperative agreement ... is deemed to be part of the Public Health Service in the Department of Health and Human Services while carrying out any such contract or agreement and its employees ... are deemed employees of the Service while acting within the scope of their employment in carrying out the contract or agreement. (Emphasis supplied).
See also Pub.L.No. 101-512, § 314, 104 Stat. 1959-1960 (1990).
Congress acknowledged that tribal governments, when carrying out self-determination contracts, are performing a federal function and that a unique legal trust relationship exists between the tribal government and the federal government in these agreements. Because of this relationship, Congress has conferred special privileges upon tribes that are usually available only to federal agencies and employees. For example, the federal government must provide liability insurance to the tribal government for self-determination contracts. See FGS Constructors, Inc. v. Carlow, 64 F.3d 1230, 1234 (8th Cir.1995).
Additionally, under 25 U.S.C. section 450 j(k), a tribal organization carrying out a contract, grant, or cooperative agreement is deemed a “federal executive agency” when carrying out such agreement, contract, or grant, and its employees are eligible to have access to federal sources of supply (e.g., access to government travel rates) on the same basis as federal employees. Tribal organizations are authorized to utilize federal property without cost. 25 -U.S.C. § 450 j(f). Federal employees who leave federal employment to work for a tribal organization in connection with a self-determination contract are allowed to retain federal benefits. 25 U.S.C. § 450 i.
A further indication of Congressional intent to treat Indian tribes as federal instru-mentalities when carrying out self -determination contracts appears in 25 U.S.C. section 450 m. There, the Act provides that should the appropriate Cabinet Secretary determine that a tribe’s performance under a self-determination contract is inadequate or involves the violation of rights or endangerment of human life or gross negligence or mismanagement, the Secretary may, after providing notice and a hearing to the tribe, rescind such contract or grant agreement in whole or in part and “ resume control or operation of the program, activity or service.”
In sum, the evidence presented at the final administrative hearing demonstrates that many of the Tribe’s purchases are made pursuant to its contractual assumption of the federal government’s duty to provide tribal services. For that reason, the Department should continue to recognize the Tribe’s status as a federal instrumentality in regard to those purchases and confer tax benefits accorded other governmental entities. We find that the Seminole Tribe of Florida meets the criteria for exemption under Section 212.08(6) and, thus, is entitled to a renewal of its consumer certificate of exemption. We see no need to address the constitutional issues pertaining to taxation immunity raised by the Tribe in our decision on this administrative appeal.
*1120 Based on the foregoing, we reverse and remand with directions to the Florida Department of Revenue to grant the Tribe’s application for renewal of its consumer certificate of exemption.
REVERSED and REMANDED.
WARNER, J., concurs.
KLEIN, J., dissents with opinion.

.The Department agreed in the proceedings below that if the Tribe was an instrumentality of the U.S. Government, the purchases would be exempt under the statute.

. The Seminole Tribe had been receiving such an exemption continuously since around 1960, or for approximately thirty-seven years.

. 25 U.S.C. § 450 etseq.