Dennis LARSON, a Minnesota resident, Plaintiff,

v.

Gerald MARTIN, individually and d/b/a Martin & Son Construction, North Dakota residents, and Granite Re Inc., an Oklahoma corporation, Defendants.

No. A4–05–047.

United States District Court,
D. North Dakota,
Northwestern Division.

Sept. 9, 2005.

Joseph G. Springer, David L. Lillehaug, Edward T. Matthews, Fredrikson & Byron, PA, Minneapolis, MN, for Plaintiff.

Gerald J. Martin, Belcourt, ND, pro se.

Jack G. Marcil, Joseph A. Wetch, Jr., Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, ND, David H. Gregerson, Christine A. Longe, Gregerson Rosow Johnson & Nilan Ltd., Minneapolis, MN, for Defendants.

1. On May 25, 2005, the Court received a letter from pro se defendant Martin contesting sufficiency of service and jurisdiction.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

HOVLAND, Chief Judge.

Before the Court is defendant Gerald Martin's Motion to Dismiss filed on May 25, 2005.[1] The Plaintiff has filed a motion opposing dismissal. For the reasons set forth below, the Court denies the motion.

### I. BACKGROUND

The Turtle Mountain Band of Chippewa Indians of North Dakota (Turtle Mountain Band) and the United States Government, through the Bureau of Indian Affairs (BIA), entered into a contract for the construction of Martin Lake Road, Route 6, in Belcourt, North Dakota (the "Project"). In turn, the Turtle Mountain Band contracted the work on the Project to Gerald Martin, the proprietor of Martin and Son Construction. *See* Affidavit of Dennis Larson, ¶ 2.

On March 8, 2002, the plaintiff, Dennis Larson, entered into an agreement with Martin to furnish labor and equipment for the Project. *See* Complaint, Ex. A. By way of an Equipment Lease dated August 1, 2002, Larson, as lessor, leased to Martin, as lessee, certain earth moving equipment for the Project. *See* Complaint, Ex. B. Clause 16 of the signed Equipment Lease provides as follows:

> LAW. THIS AGREEMENT WILL BE DEEMED FULLY EXECUTED AND PERFORMED IN OUR OR ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS AND WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH STATE LAW. YOU EXPRESSLY CONSENT TO JURISDICTION OF ANY STATE OR FEDERAL COURT IN THAT STATE OUR

The Court construed the letter as a motion to dismiss. *See* Docket No. 23.

OR OUR ASSIGNEE'S PRINCIPAL PLACE OF BUSINESS OR ANY OTHER COURT SO CHOSEN BY US.

*See id.*

On May 12, 2003, the two entered into an Equipment Rental Contract where Larson, as lessor, leased to Martin, as lessee, another piece of equipment, a "627B Scraper," for use on the Project. *See* Affidavit of Dennis Larson, ¶ 5. Again, on September 11, 2003, an Equipment Lease Agreement was signed where Larson, as lessor, leased to Martin, as lessee, a 627 Scraper, for use on the Project. *Id.* ¶ 6.

Pursuant to the contract with the Turtle Mountain Band, Martin was required to post a Subcontractor Labor and Material Payment Bond for the full value of Martin's work on the Project. On July 23, 2002, defendant Granite Re, Inc. (Granite Re) issued Subcontractor Labor and Material Payment Bond, Bond# GRND20021A, with Martin as principal in the amount of $1,696,588.39 for Phase I of the Project. Later, on June 25, 2003, Granite Re issued a second Subcontract Labor and Material Payment Bond, Bond GRND21245A, with Martin as principal in the amount of $1,999,480.38 for Phase II of the Project. *See* Affidavit of Dennis Larson, ¶ 8. Both bonds contained the following provision:

No suit or action shall be commenced hereunder by any claimants,

... [o]ther than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated, and not elsewhere.

*See* Complaint Ex.s C & D.

It appears that neither Phase I nor Phase II of the Project have been completed. Martin also failed to make payments to Larson in accordance with the agreements. As a result, Larson filed suit against Gerald Martin and Granite Re in United States District Court for the District of North Dakota on March 23, 2005. *See* Docket No. 1.

## II. *LEGAL DISCUSSION*

The defendant, Gerald Martin, seeks dismissal based on lack of subject matter jurisdiction and the tribal exhaustion doctrine.[2] The Court will address each argument in turn.

### A. *SUBJECT MATTER JURISDICTION*

■ In the complaint, Larson invokes 28 U.S.C. § 1332 which provides that "district courts have original diversity jurisdiction over civil actions when the matter in controversy exceeds $75,000, without considering interest and costs, and when the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir.2001) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996)). As Larson correctly notes, it is well-established that a Native American is treated as any other citizen for jurisdictional purposes. *See* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3622 (2d ed. 1984 & Supp.2004). Therefore, a Native American that resides

---

2. Martin also contends that Rule 54 of the Federal Rules of Civil Procedure prohibits entry of a default judgment exceeding $735,546.83 plus attorney's fees and costs.

However, the Court is not prepared to enter default judgment in the present case due to Martin's appearance. As a result, the Court need not address this issue.

on the reservation is a citizen of the state in which the reservation is located.

■ It is undisputed that Gerald Martin is an enrolled member of the Turtle Mountain Band of Chippewa. Martin resides within the exterior boundaries of the Turtle Mountain Reservation in Belcourt, North Dakota. Under the law, Martin is considered to be a citizen of North Dakota for jurisdictional purposes. The plaintiff, Dennis Larson, is a citizen of Minnesota. Based on the citizenship of the parties and the amount in controversy, it is clear that this Court has original diversity jurisdiction over this action under 28 U.S.C. § 1332.

## B. *TRIBAL COURT EXHAUSTION*

■ It is well-established that principles of comity require that tribal-court remedies must be exhausted before a federal district court should consider relief in a civil case regarding tribal-related activities on reservation land. *Krempel v. Prairie Island Indian Community*, 125 F.3d 621, 622 (8th Cir.1997) (citing *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985); *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412 (8th Cir. 1996)). The purpose of the doctrine has been explained by the United States Supreme Court as follows:

> [T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embod-

ied in treaties and elsewhere, and administrative or judicial decisions.

> We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal basis for the challenge. Moreover the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed. The risks of the kind of "procedural nightmare" that has allegedly developed in this case will be minimized if the federal court stays its hand until after the Tribal Court has had a full opportunity to determine his own jurisdiction and to rectify any errors it may have made. Exhaustion of tribal court remedies, moreover, will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

*National Farmers Union*, 471 U.S. 845, 855–56, 105 S.Ct. 2447.

■ Exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts. *LaPlante*, 480 U.S. 9, 17, 107 S.Ct. 971. In short, "[t]he tribal exhaustion doctrine is based on 'a policy of supporting self-government and self-determination,'" and although the rule is prudential rather than jurisdictional, "[e]xhaustion is mandatory ... when a case fits within the policy." [3]

---

3. As noted by the United States Supreme Court and the Eighth Circuit Court of Appeals "[e]xhaustion is not required if an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, if the action is patently violative of express jurisdictional prohibitions, or if exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *DeMent v. Oglala Sioux Tribal Court*,

*Gaming World International, Ltd. v. White Earth Band of Chippewa,* 317 F.3d 840, 849 (8th Cir.2003) (citing *LaPlante,* 480 U.S. 9, 20 n. 14, 107 S.Ct. 971; *National Farmers Union,* 471 U.S. 845, 856, 105 S.Ct. 2447; *Duncan Energy Co. v. Three Affiliated Tribes,* 27 F.3d 1294, 1300 (8th Cir.1994); *Burlington N. R.R. Co. v. Crow Tribal Council,* 940 F.2d 1239, 1245 (9th Cir.1991)).

■ Although the criminal jurisdiction of tribal courts is subject to substantial federal limitation, *see Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), their civil jurisdiction is not so restricted. *Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 15, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) (citing *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 854–55, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). However, as a general rule, "absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances." *Strate v. A–1 Contractors,* 520 U.S. 438, 445, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) (citing *Oliphant,* 435 U.S. 191, 98 S.Ct. 1011; *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981)). As the United States Supreme Court explained, " 'the inherent sovereign powers of an Indian tribe'— those powers a tribe enjoys apart from express provision by treaty or statute—'do not extend to the activities of nonmembers of the tribe.' " *Id.* at 445–46, 117 S.Ct. 1404 (quoting *Montana,* 450 U.S. 544, 565, 101 S.Ct. 1245)). Notwithstanding,

> Indian tribes [do] retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate,

through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Montana,* 450 U.S. 544, 565–66, 101 S.Ct. 1245 (citations omitted).

> *Montana* thus, described the general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health or welfare.

*Strate v. A–1 Contractors,* 520 U.S. 438, 446, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997).

■ The application of the tribal exhaustion doctrine is complicated by the existence of a valid forum selection clause. While there is disagreement among the circuit courts regarding the impact of a forum selection clause upon the tribal exhaustion doctrine, *compare Altheimer & Gray v. Sioux Mfg. Corp.,* 983 F.2d 803, 814 (7th Cir.1993) (finding that the tribal exhaustion doctrine did not apply to a forum selection clause), *with Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.,* 207 F.3d 21, 33 (1st Cir.2000)

874 F.2d 510, 516 (8th Cir.1989) (citing *National Farmers Union,* 471 U.S. 845, 856 n. 21, 105 S.Ct. 2447, 85 L.Ed.2d 818.). Neither

the parties, nor the Court, find any of these concerns relevant with respect to this case

(holding that the existence of tribal court jurisdiction under the tribal exhaustion doctrine must not be made with reference to a forum selection clause), the answer in the Eighth Circuit appears rather clear: when the negotiating parties have agreed to an appropriate forum, exhaustion of tribal remedies is not required. *See FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230, 1233 (8th Cir.1995).

In *Carlow*, the United States Government, through the BIA, agreed to provide funding to the Oglala Sioux Tribe for repairs to the White Clay Dam located on the Pine Ridge Indian Reservation in South Dakota. The Oglala Sioux Tribe contracted with Cooper Consultants, Inc., to be the project engineer, and Michael Carlow to be the general contractor. In turn, Carlow hired FGS Constructors, Inc., (FGS) as a subcontractor to work on the dam. Due to alleged non-payments, FGS brought a diversity action against Carlow in United States District Court for the District of South Dakota. The district court dismissed the action on the grounds of comity and the failure to exhaust tribal remedies. On appeal, the Eighth Circuit reversed. In doing so, the Eighth Circuit relied heavily upon the existence of a forum selection clause appearing in the contract between FGS and Carlow which read as follows: "In the event there is any dispute between the parties arising out of this agreement, it shall be determined in the Oglala Sioux Tribal Court or other court of competent jurisdiction." *Carlow*, 64 F.3d 1230, 1233. The court concluded,

> We do not agree with the district court's determination that FGS must first exhaust its remedies in the tribal court.

The contracting parties agreed that a plaintiff could sue either in the federal district court of South Dakota (a court of competent jurisdiction) or in the tribal court. By this forum selection clause, the Tribe agreed that disputes need not be litigated in tribal court. The district court, therefore, had no significant comity reason to defer this [ ] litigation first to the tribal court.

*Id.*

■ As outlined above, the Equipment Lease and the Subcontract Labor and Material Payment Bonds contained provisions which provided for jurisdiction in United States District Court for the District of North Dakota. The validity of those provisions is unquestioned. As a result, the Eighth Circuit's holding in *Carlow* is instructive. By signing the Equipment Lease and Subcontractor Labor and Material Payment Bonds, Martin agreed that disputes arising from those contracts can be litigated in federal district court. More important, Martin agreed that disputes need not be litigated in tribal court, nor can they be.[4] Following *Carlow*, the Court finds no legally justifiable reason to disrupt the parties' agreed-upon forum by way of the tribal exhaustion doctrine. Under the facts presented, the Court finds that Larson need not exhaust tribal remedies prior to seeking relief in federal district court.

### III. CONCLUSION

For the reasons set forth above, the Defendant's Motion to Dismiss is **DENIED** (Docket No. 16). The Court also **DENIES** the Plaintiff's Motion for Entry

---

4. To refresh, both Bonds contained the following provision:

    No suit or action shall be commenced hereunder by any claimants,

    ... [o]ther than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated, and not elsewhere.

    *See* Complaint Ex.s C & D.

of Default (Docket No. 9), Plaintiff's Motion for Default Judgment (Docket No. 10), and the Stipulation Regarding Default Judgment (Docket No. 15) based on Gerald Martin's appearance in this matter.

**IT IS SO ORDERED.**