George COMES FLYING and Fred
Comes Flying, Plaintiffs,

v.

UNITED STATES of America, acting
through the BUREAU OF INDIAN
AFFAIRS, Defendant.

No. CIV. 92–3030.

United States District Court,
D. South Dakota, C.D.

July 23, 1993.

Charles M. Thompson, May, Adam, Gerdes, & Thompson, Pierre, SD, for plaintiffs.

Mikal G. Hanson, Asst. U.S. Atty., Pierre, SD, for defendant.

MEMORANDUM OPINION AND ORDER

BOGUE, Senior District Judge.

Defendant moved to dismiss this action on October 23, 1992. After initial briefing by the parties, Judge Porter ruled (on April 7, 1993) that additional documentation was required before a decision could be reached on the motion. New materials and briefs have been received, and the matter is now ripe for decision. For the reasons that follow, the motion is granted.

Plaintiffs' basic claim, as pertains to this motion, is that the United States can be held liable for the misfeasance of employees of the Crow Creek housing authority, pursuant to a recently-enacted section of the Indian Self–Determination and Education Assis-

tance Act, Public Law No. 101–512, Title III, § 314 (1990). That section provides:

> With respect to claims resulting from the performance of functions ... under a contract, grant agreement, or cooperative agreement authorized by the Indian Self-Determination and Education Assistance Act, ... an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior ... while carrying out any such contract or agreement and its employees are deemed to be employees of the Bureau ... while acting within the scope of their employment in carrying out the contract or agreement: Provided, That ... any civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and afforded the full protection and coverage of the Federal Tort Claims Act.

*Id.* In short, the law allows persons to recover from the United States for losses arising out of the actions of employees who are working under contracts authorized by the Self-Determination Act. Thus, the controlling question for purposes of the current motion is whether the employees whose alleged misfeasance caused plaintiffs' injuries were working under a self-determination contract.[1]

A "self-determination contract" is one "entered into under Title I of this Act between a tribal organization and the appropriate Secretary for the planning, conduct and administration of programs or services which are otherwise provided to Indian tribes and their members pursuant to Federal law...." 25 U.S.C.A. § 450b(j) (Supp.1993). The word "Secretary," for purposes of the Act, "means either the Secretary of Health and Human Services [HHS] or the Secretary of the Interior or both." 25 U.S.C.A. § 450b(i) (Supp. 1993). Thus—even assuming all the other elements of a self-determination contract are met—liability will only attach to the United States based on contracts entered into by one of the above-enumerated Secretaries.

The materials which have been submitted by plaintiffs demonstrate that the contracts at issue were entered into with the Department [Secretary] of Housing and Urban Development (HUD); not HHS or Interior. Therefore, the applicable contracts cannot be regarded as self-determination contracts.

■ Plaintiffs argue in the alternative that if the Court finds that the applicable contracts are not self-determination contracts, they should still be allowed to go forward with this action because the contracts *could* have been authorized under the Act. This is based on a slight twist of the meaning of the phrase "authorized by" in the Act, which this Court rejects. A straightforward, sensible reading of the Act requires that, for the waiver of immunity to apply, the relevant contracts must be *actually* authorized by the Self-Determination Act, not just theoretically capable of being authorized.

Similarly, the Court rejects plaintiffs' argument that the BIA (ergo Department of the Interior) actually approved the applicable contracts because of its involvement with the creation of Indian Housing Authorities, or the assistance BIA renders to housing projects which are under construction. As noted above, the Secretary of HUD, *not* Interior or HHS, was the contracting party in the applicable housing arrangements.

■ A waiver of sovereign immunity by the United States must be strictly construed and may not be extended by implication. *See, e.g., United States v. Nordic Village, Inc.,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Here, it is clear that in the 1990 Act Congress waived sovereign immunity by allowing FTCA liability to attach

---

1. In this regard, Judge Porter's order of April 7, 1993 directed plaintiffs to submit documentation to demonstrate that the Act applies. Barring such proof by plaintiffs, this Court does not have subject-matter jurisdiction, as the United States is the only named defendant and the Act is the only basis for plaintiffs' suit. Although for purposes of a motion to dismiss the Court regards plaintiffs' factual allegations as true, the bare allegation of jurisdiction over the United States is not entitled to similar deference.

to injuries arising out of certain contracts (more precisely, self-determination contracts) between U.S. government agencies and tribal organizations.

"Interpretation of a statute must begin with the statute's language." *Mallard v. United States District Court of Iowa,* 490 U.S. 296, 300, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) (citations omitted). The given statutory language, as noted above, dictates on its face that plaintiffs' claim against the United States must fail. In this Court's opinion, statutory interpretation is difficult when (as here) Congress passes an Act without providing some legislative history to explain its reasons for the passage of such act.[2] Waivers of sovereign immunity are a rare thing, indeed, and this Court is hard-pressed to understand Congress' reason for waiving immunity for contracts made under the Self–Determination Act, and not under any of the numerous other programs provided by Congress to aid American Indians. But do it they did, and this Court is left to reach its decision by analysis of the language of the Act alone, in light of its conceded inability to psychoanalyze Congress.

In summary, the above-entitled matter does not involve a claim for which Congress has waived the United States' sovereign immunity. Absent such a waiver, plaintiffs' action against the United States cannot go forward. Therefore, it is hereby

ORDERED that Defendant's motion to dismiss, filed October 23, 1992, is granted. Judgment shall be entered accordingly.

---

**2.** The only parcel of legislative history reported on the 1990 amendment waiving sovereign immunity for self-determination contracts is President George Bush's noted distaste for the provision, expressed when he signed it. Statement of President Bush upon Signing H.R. 5769, 26 Weekly Comp. Pres. Doc. 1768 (Nov. 12, 1990), *reprinted in* 1990 U.S.C.C.A.N. 3283–4.