1996 SD 112

**Mary Ann FORD, Plaintiff and Appellant,**

v.

**Robert MOORE and Moore & Kandaras, Attorneys at Law, Defendants and Appellees.**

**No. 19291.**

Supreme Court of South Dakota.

Argued March 13, 1996.

Decided Sept. 4, 1996.

Rick Johnson of Johnson, Eklund, Nicholson & Dougherty, Gregory, for plaintiff and appellant.

Michael J. Schaeffer of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendants and appellees.

KONENKAMP, Justice.

[¶ 1] Mary Ann Ford sued her former attorney claiming he negligently omitted filing her federal tort claim within the two-year statute of limitations, and alternatively, the lawsuit he brought in state court was defective. The circuit court granted summary judgment for the attorney. We reverse.

## FACTS

On December 15, 1989, Ford was injured while a passenger in a vehicle driven by Molly Ann Lafferty, an employee of the Community Health Representative Program (CHRP) in Rapid City. Lafferty was driving Ford to a medical appointment under a health service contract between the United States of America, acting through the Indian Health Service (IHS), and the Rapid City Indian Health Advisory Board (Board). The contract required the Board to administer the CHRP for Native Americans, which included transporting individuals needing medical services.

[¶ 3] Ford first hired another lawyer to pursue her claim, but after becoming dissatisfied, employed attorney Robert Moore to represent her on June 17, 1991. The next day Moore's legal assistant sent him a memo stating, "[u]nless I have read the statute completely wrong, Ms. Ford has two years to file a FTCA [Federal Tort Claims Act] claim, or six months after receiving final denial of administrative relief on her claim." A note at the bottom of the memo warned: "statute runs 12–15–91." Moore nonetheless concluded Ford had no FTCA case. Following unsuccessful settlement negotiations, Moore brought suit on Ford's behalf against Lafferty and the CHRP in Pennington County Circuit Court on December 14, 1992. Distressed with the progress of her case, Ford replaced Moore with a different attorney on January 8, 1993.

[¶ 4] Lafferty and the CHRP moved for summary judgment contending the circuit court lacked subject matter jurisdiction. They argued the CHRP contract was authorized under the Indian Self–Determination and Education Assistance Act, 25 U.S.C. § 450 et seq (ISDEAA), and because the federal government waived its sovereign immunity in contracts under this Act, jurisdiction belonged exclusively in federal court under the FTCA. Ford did not resist the motion, and the court granted summary judgment in favor of the CHRP and Lafferty, holding the state court lacked subject matter jurisdiction. After the order was entered on April 11, 1994, Ford did not appeal. By then the two-year statute of limitations for bringing a claim under the FTCA had long expired.

[¶ 5] Ford then retained her current attorney, who brought this legal malpractice action against Moore on September 26, 1994. Her complaint averred Moore was negligent in failing to file a federal tort claim within the two-year statutory period and alternatively, in bringing an invalid state action, due to insufficiency of process. Moore answered, denying negligence and asserting the underlying action was properly commenced in state court. He moved for summary judgment on the basis the CHRP contract was not a self-determination agreement, thus the matter was not cognizable as a federal tort claim. He maintained that had Ford resisted the initial motion for summary judgment or appealed the court's order, the underlying state action would not have been lost.

[¶ 6] In granting summary judgment for Moore, the court determined the CHRP contract was not authorized under the ISDEAA, and therefore Ford never had a valid FTCA case. The court declined to consider whether the state action Moore brought was invalid for insufficiency of process. We concur on the latter issue and likewise decline to review the question, as Ford's state case was dismissed not for insufficiency of process, but for lack of subject matter jurisdiction (FTCA fixed jurisdiction in federal court). The defendants had evidently waived asserting the lack of personal jurisdiction defense. *Williams Ins. of Pierre v. Bear Butte Farms*

*Ptnp.,* 392 N.W.2d 831 (S.D.1986). This leaves for our review the question whether material issues of fact exist on Moore's purported negligence in not bringing a timely federal tort claim.

## ANALYSIS

[¶ 7] Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon,* 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin,* 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). To prevail in a legal malpractice action, the plaintiff must prove:

1. an attorney-client relationship giving rise to a duty;

2. the attorney, either by an act or a failure to act, violated or breached that duty;

3. the attorney's breach of duty proximately caused injury to the client; and

4. the client sustained actual injury, loss or damage.

*Keegan v. First Bank of Sioux Falls,* 519 N.W.2d 607, 611 (S.D.1994).

[¶ 8] The circuit court correctly reasoned that to assess Moore's alleged negligence, it had to decide whether a genuine FTCA case existed—if Ford had no valid federal tort claim, how could Moore be negligent in not filing it? The ISDEAA authorizes certain claims filed against Indian Tribes, organizations or contractors to be covered by the FTCA:

With respect to claims resulting from the performance of functions ... under a con-

tract, grant agreement, or any other agreement or compact agreement authorized by the Indian Self–Determination and Education Assistance Act, ... an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior ... while carrying out any such contract or agreement and its employees are deemed to be employees of the Bureau ... while acting within the scope of their employment in carrying out the contract or agreement: *Provided*, That after September 30, 1990, any civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and afforded the full protection and coverage of the Federal Tort Claims Act....

Pub.L. No. 101–512, Title III, § 314, 104 Stat. 1959 (codified at 25 U.S.C. § 450f notes). In *Comes Flying v. U.S. Through Bureau of Indian Affairs*, 830 F.Supp. 529, 530 (D.S.D.1993), the court summarized the limits of this provision:

> In short, the law allows persons to recover from the United States for losses arising out of the actions of employees who are working under contracts authorized by the Self–Determination Act. Thus, the controlling question for purposes of the current motion is whether the employees whose alleged misfeasance caused plaintiffs' injuries were working under a self-determination contract.

*Id.* (footnote omitted). Likewise, the pivotal issue here is whether Lafferty, while acting within the scope of her employment, was serving under a self-determination contract at the time of the automobile accident.

 [¶ 9] A self-determination contract is an agreement "entered into [in part A of the ISDEAA] between a tribal organization and the appropriate Secretary for the planning, conduct and administration of programs or services which are otherwise provided to Indian tribes and their members pursuant to

Federal law...." 25 U.S.C. § 450b(j)(1995). This Act provides in part:

> The Secretary is directed, *upon the request of any Indian tribe by tribal resolution*, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct, and administer programs or portions thereof....

25 U.S.C. § 450f(a)(1)(1995)(emphasis added). The law mandates that a tribal organization must obtain a tribal resolution before entering into a self-determination contract:

> If so authorized by an Indian tribe under paragraph (1) of this subsection, a tribal organization may submit a proposal for a self-determination contract ... to the Secretary for review.

25 U.S.C. § 450f(a)(2)(1995). Federal regulations reiterate the tribal resolution requirement:

> Before the Bureau can enter into a contract with a tribal organization, it must be requested to do so by the tribe to be served under the contract. The tribe's request shall be in the form of a resolution by the tribal governing body. If the tribal organization is applying for a contract to perform services benefiting more than one tribe, an authorizing resolution from each tribal governing body must be obtained before submitting the application to the Bureau for approval.

25 C.F.R. § 271.18(a)(1995). A "tribal organization" is

> [T]he recognized governing body of any Indian tribe; any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body or which is democratically elected by the adult members of the Indian community to be served by such organization and which includes the maximum participation of Indians in all phases of its activities: *Provided*, That in any case where a contract is let or grant made to an organization to perform services benefiting more than one Indian tribe, *the approval of each such Indian tribe shall be a prerequisite to the letting or making of such contract or grant* [.]

25 U.S.C. § 450b(*l*)(1994)(emphasis added). This statutory scheme makes it clear a tribal resolution is a prerequisite to any contract made under the ISDEAA. Did the contract before us receive the required tribal resolutions? In granting summary judgment, the circuit court found no such resolutions existed.

[¶ 10] Ford offered tribal resolutions entered into by the Oglala, Rosebud and Cheyenne River Sioux Tribes. She contends genuine issues of material fact exist on the scope of these resolutions. The Oglala Sioux Tribe's resolution, dated August 1, 1989, stated in part:

> WHEREAS, Rapid City Indian Health Advisory Board, Inc., (RCIHAB, Inc.) presently is administering a Buy–Indian contract with Indian Health Service to provide health services to American Indians in Pennington county, and

> · WHEREAS, RCIHAB, Inc., wishes to enter into a P.L. 93–638 [ISDEAA] contract in order to be eligible for liability insurance coverage and carry/over funds, now

> THEREFORE BE IT RESOLVED, that the Oglala Sioux Tribe approves RCI-HAB, Inc., to enter into a P.L. 93–638 contract for health services to all eligible tribal members in Pennington County, and

> BE IT FURTHER RESOLVED, that this resolution remain in effect until such time as it is rescinded....

The Rosebud Tribe's resolution was nearly identical.[1] Despite the reference to the IS-DEAA, Moore argues the CHRP contract was authorized under the Buy Indian Act. He offered the affidavit of Archie Clifford, the IHS contracting officer, who asserted there were no supporting resolutions.[2] Our review of the record, however, leaves us uncertain on whether the extant tribal resolutions were intended to support the CHRP contract. Furthermore, Clifford's affidavit was contradicted by the other contract signatory, Melvin Miner, chairperson of the Rapid City Indian Health Advisory Board. Miner stated by affidavit, "to the best of his knowledge," the CHRP contract was a "self-determination contract." Although the face of the CHRP contract lists 25 U.S.C. § 47 (Buy Indian Act) as "authority for using other than full and open competition," this does not necessarily make it an agreement under the Buy Indian Act. Five changes were subsequently made to this contract, all referencing 25 U.S.C. § 450g as authority to modify.[3] Moore argues these changes were all made after the automobile accident and thus are inapplicable. While "[p]arol or extrinsic evidence may not be admitted to vary the terms of a written instrument or to add to or detract from the writing[,] [w]hen the writing is uncertain or ambiguous ... such evidence is admissible to explain the instrument." Jensen v. Pure Plant Food Inter., Ltd., 274 N.W.2d 261, 263–64 (S.D.1979)(emphasis added). Whether contract language is ambigu-

1. The Cheyenne River Sioux Tribal resolution makes specific reference to an OBGYN contract. The resolutions from the Oglala Sioux Tribe and the Rosebud Sioux Tribe were not so limited and could be construed to apply to the CHRP contract which funded Lafferty's job, rather than exclusively to the OBGYN contract. Both the OBGYN contract and the CHRP contract were executed the same day, September 29, 1989.

2. Clifford stated in his affidavit:

> That he is employed with the Contracts and Grants Division of the Indian Health Service.... [H]e was the contract officer who executed Contract No. 241–90–0012 [CHRP contract] between the Rapid City Indian Health Advisory Board and the United States of America.... [He] researched his records relating to this contract and determined that the contract was not a Self-Determination Act contract because there were no tribal resolu-

tions authorizing Contract No. 241–90–0012. The Indian Health Service authorizes contracts under one of two acts. A contract is authorized in this office under authority of either (1) 25 U.S.C. § 47, otherwise known as the Buy Indian Act; or (2) 25 U.S.C. § 450, also known as the Self–Determination Act. As specifically set forth on the first page of Contract No. 241–90–0012 [CHRP contract], this contract was authorized pursuant to 25 U.S.C. § 47, the Buy Indian Act and *not* pursuant to 25 U.S.C. § 450, the Indian Self–Determination Act....

> The resolution of the Ogala [sic] Sioux Tribe, the Rosebud Sioux Tribe, and the Cheyenne River Sioux Tribe ... were attached to the 1990 OBGYN Contract and were not authorizations for Contract 241–90–0012.

3. Although portions of § 450g were repealed in 1988, for purposes of our analysis, the pertinent sections were merely recodified at § 450f. *See* 25 U.S.C. § 450g notes (1995).

ous is ordinarily a question of law. *Ducheneaux v. Miller*, 488 N.W.2d 902, 909 (S.D. 1992). "A contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract." *Id.* (quoting 17A AmJur2d *Contracts* § 338 (1991)). Yet, not only is there variance over which contract the resolutions were meant to be appended to, but the tribal resolutions themselves are also unclear. Hence, we find as a matter of law that the contract is ambiguous. When there is an ambiguous contract, evidence may be introduced to determine the intention of the parties, which is a question of fact to be resolved by the fact finder. *North River Ins. Co. v. Golden Rule Const., Inc.,* 296 N.W.2d 910, 912 (S.D.1980).

[¶ 11] Moore also argues the CHRP contract was entered pursuant to 25 U.S.C. § 1616 ("Community Health Representative Program") and thus it cannot be a self-determination contract under 25 U.S.C. § 450f. A Community Health Representative Program is allowed "[u]nder the authority of … [25 U.S.C. § 13]…." 25 U.S.C. § 1616(a)(1995). Importantly, 25 U.S.C. § 450f(a) provides in part:

(1) The Secretary is directed, upon the request of any Indian tribe by tribal resolution, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct, and administer programs or portions thereof. . . .

(B) which the Secretary is authorized to administer for the benefit of Indians under the Act of November 2, 1921 (42 Stat. 208) [25 U.S.C. 13], and any Act subsequent thereto. . . .

(parentheses in original). Therefore, contrary to Moore's assertion, the Community Health Representative Program was authorized through 25 U.S.C. § 13 to enter IS-DEAA contracts.

## SUMMARY

[¶ 12] Conflicting evidence on the intent of the contracting parties, coupled with tribal resolutions which are unclear about which contracts they pertain to, and subsequent contractual modifications, all create genuine issues of material fact, precluding summary judgment. In view of this ruling, we need not consider the other arguments Ford raises.

[¶ 13] Reversed.

[¶ 14] GILBERTSON, J., concurs.

[¶ 15] MILLER, C.J., and SABERS, J., concur in result.

[¶ 16] AMUNDSON, J., dissents.

SABERS, Justice (concurring in result).

[¶ 17] İ concur in result on the basis that a genuine issue of material fact exists whether the actions or omissions of attorney Moore, alone or in connection with the actions or omissions of other attorneys, caused Ford's loss.

[¶ 18] MILLER, C.J., joins this writing.

AMUNDSON, Justice (dissenting).

[¶ 19] In this case, after Moore commenced an action in state court on behalf of Ford, the issue of whether or not the CHRP contract was a self-determination contract was the issue presented to the trial court on CHRP's motion to dismiss for lack of jurisdiction. Moore had been discharged by Ford prior to the hearing on this motion. Counsel representing Ford at the hearing on the motion to dismiss did not resist the relief requested. Therefore, the motion was granted.

[¶ 20] After this dismissal and no appeal therefrom, Ford commenced this malpractice action. The first time any investigation was made into the records surrounding the CHRP contract was by counsel defending Moore in this action. The information discovered through counsel's efforts was submitted to the trial court in the summary judgment proceeding which resulted in this appeal. After review of this data, the trial court found there was no tribal resolution for this CHRP contract.

[¶ 21] The majority correctly points out that "[t]he law further mandates that a tribal organization must obtain a tribal resolution before entering into a self-determination contract." Not only is this requirement stated at 25 U.S.C. § 450f(a)(2) (1996), it is also stated at 25 C.F.R. § 271.18(a) (1996). The

contract before us did not receive the required tribal resolutions. The majority believes that, since Miner states that the contract is a self-determination contract and Clifford states it is a Buy Indian Act, this creates a genuine issue of material fact.

[¶ 22] Two uncontroverted facts in this record are that the Cheyenne River Tribe's resolution refers specifically to the 1990 OB/GYN contract and, second, the front page of the CHRP contract expressly mentions 25 U.S.C. § 47, the Buy Indian Act, whereas the OB/GYN contract cites 25 U.S.C. § 450g, the Indian Self–Determination Act. Ford asserts that the tribal resolutions applicable to the OB/GYN contract are also the prerequisite tribal resolutions for the CHRP contract. Yet there is simply no factual support for this conclusion. "A waiver of sovereign immunity by the United States must be strictly construed and may not be extended by impli-

cation." *Comes Flying v. U.S. Through Bur. of Indian Aff.,* 830 F.Supp. 529, 530 (D.S.D. 1993); *see also Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 2702, 69 L.Ed.2d 548, 553–54 (1981) (limitations and conditions upon sovereign immunity must be strictly observed and exceptions are not to be implied).

[¶ 23] Based upon these undisputed facts considered by the trial court, I agree there was no tribal resolution supporting the CHRP contract and, therefore, I would affirm the circuit court in this matter.