John DEMONTINEY, d/b/a Earthwalker Engineering, Plaintiff–Appellant,

v.

UNITED STATES of America, on behalf of its agency, the DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS; Chippewa Cree Tribe of Rocky Boy's Reservation; Defendants–Appellees.

No. 99–35874.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 2001

Filed July 16, 2001

Robert L. Stephens, Jr., Southside Law Center, Billings, Montana, for the plaintiff-appellant.

Victoria L. Francis, Assistant United States Attorney, Billings, Montana; Barbara C. Biddle and Mary K. Doyle, Department of Justice, Civil Division, Washington, D.C., for defendant-appellee Department of Interior, Bureau of Indian Affairs.

Daniel Belcourt, Tribal Attorney, Chippewa Cree Tribe, Box Elder, Montana; and Daniel F. Decker, Decker & Desjarlais, St. Ignatius, Montana, for defendant-appellee Chippewa Cree Tribe of Rocky Boy's Reservation.

Before: PREGERSON, THOMAS, and GOULD, Circuit Judges.

RONALD M. GOULD, Circuit Judge:

This case arises from a contract dispute among an Indian tribal member, the tribe, and a federal agency over a construction project on tribal land. The issues before us are jurisdictional. Appellant, Chippewa Cree tribal member John Demontiney ("Demontiney"), doing business as Earthwalker Engineering, entered into a subcontract with Appellee, the Chippewa Cree Tribe of Rocky Boy's Reservation (the "Tribe"), for engineering services to remodel the Bonneau Dam located on tribal land in Montana. Demontiney sued the Tribe and Appellee, the United States of America, Department of Interior, Bureau of Indian Affairs, the prime contractor for the dam project, for breach of contract. The district court granted the motions to dismiss filed by the United States and the Tribe, concluding that neither the United States nor the Tribe had waived its sovereign immunity to suit in district court and that their sovereign immunity had not been otherwise abrogated. The district court transferred the claims against the United States to the United States Court of Federal Claims ("Court of Federal Claims").

Demontiney appeals the district court's grant of the motions to dismiss. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL HISTORY

On May 15, 1992, the United States, through the Bureau of Indian Affairs ("BIA"), entered into a contract with the Tribe to perform structural modifications to the Bonneau Dam on the Rocky Boy's Indian Reservation in Montana. On July 16, 1992, Earthwalker Engineering ("Earthwalker") and the Tribe entered into a contract concerning the dam construction ("July subcontract"). On August 6, 1992, Earthwalker and the Tribe signed an "Architect–Engineer contract" for $823,000 to complete all the modifications to the dam ("August subcontract"). The August subcontract incorporated provisions of a longer "General Provisions contract." The two subcontracts also incorporated "Scope of Work" provisions for the "Final Design" and the "Early Warning System" of the dam.[1] Disputes arose concerning Earthwalker's performance under the subcontract, and the Tribe terminated the subcontract on May 3, 1995.

About one year later, Demontiney filed a complaint in the Chippewa Cree Tribal Court ("Tribal Court") against the Chippewa Cree Tribal Business Committee

---

1. When denoting the entirety of the subcontractual arrangement, we refer to the "subcontract".

("Business Committee") and the Tribe. Shortly thereafter, Demontiney filed another complaint against the Business Committee and the Tribe in Tribal Court alleging breach of contract. The complaint indicated that "[p]laintiff prays for the Chippewa Tribal Court Remedies to be exhausted and move him to the federal court system." In an affidavit attached to the second complaint, Demontiney stated that he had "appeared before the Chippewa Cree Business Committee on this matter and ... had no relief." Demontiney then moved for a default judgment against the Business Committee and the Tribe. The Tribal Court denied the motion for default judgment and dismissed the complaint for failure to state a claim. The court found that: (1) the case was moot because the Tribe–BIA contract had been completed and the "Defendant's [sic] have terminated their contractual relationship with the Plaintiff due to Plaintiff's failure to deliver contract documents"; (2) Demontiney had not established that the Tribe had waived its sovereign immunity; and (3) the proper forum for resolving the dispute was the Business Committee. Two months later, the Tribal Court issued another order dismissing the case without prejudice and indicated that its ruling could be appealed within five days. Demontiney did not appeal the decision.

Demontiney also filed a complaint concerning the unpaid balance of the subcontract with a contracting officer of the BIA. The contracting officer made a final determination that because there was no contract between Earthwalker and the BIA, no relief was available. Demontiney did not appeal the contracting officer's decision.

On November 20, 1998, Demontiney filed a complaint against the United States and the Tribe in the United States District Court for the District of Montana. Demontiney asserted jurisdiction pursuant to the Contract Disputes Act of 1978, the Prompt Payment Act, and the Equal Access to Justice Act. Demontiney alleged that Earthwalker had entered into a multi-part contractual agreement with the Tribe to provide engineering services for the dam project, and that the BIA had approved the subcontract and had overseen its performance. Demontiney further claimed to have exhausted tribal judicial and administrative remedies and administrative remedies under the Contract Disputes Act.

In his prayer for relief, Demontiney requested: (1) $185,419 representing the alleged balance due under the subcontract, plus twelve percent interest under the Prompt Payment Act; (2) $55,305 in costs and expenses incurred for performance under the subcontract, plus interest; (3) $145,426 for payment to another firm for work completed in connection with Earthwalker's performance on the subcontract; and (4) attorneys' fees under the subcontract's terms and the Equal Access to Justice Act.

The Tribe filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), stating that the subcontract was between a tribal member and the Tribe and should be resolved by the "administrative, legislative, and judicial branches" of the tribal government. The Tribe also argued that Demontiney had not exhausted tribal remedies, and that the Tribe had not waived its sovereign immunity.

The United States filed a motion to dismiss or in the alternative for summary judgment. The United States contended that federal sovereign immunity barred Demontiney's claims against the BIA in district court and that the Contract Disputes Act, the Prompt Payment Act, and the Equal Access to Justice Act did not provide jurisdiction in this context. The

United States also contended that Demontiney was not entitled to bring a claim against it under the Contract Disputes Act because there was no privity of contract between Earthwalker and the BIA.

The Tribe filed a separate response to the United States' motion to dismiss. In the response, the Tribe agreed that the district court lacked jurisdiction over the United States, but argued that there was privity between Earthwalker and the BIA because of: (1) the BIA's close oversight of the subcontract; and (2) the "nearly identical" terms of the Tribe–BIA contract and the Earthwalker–Tribe subcontract.

The district court granted the motions to dismiss of the United States and the Tribe. The district court determined that it lacked jurisdiction over either the United States or the Tribe for Demontiney's contract claims because neither the United States nor the Tribe had waived its sovereign immunity or had its sovereign immunity abrogated by Congress. The district court also found that if Earthwalker was in privity with the BIA, then Demontiney would have jurisdiction to pursue his contract claims against the United States under the Contract Disputes Act in the Court of Federal Claims. Without making this privity determination, the district court transferred Demontiney's claims against United States to the Court of Federal Claims.

Demontiney appeals.

## DISCUSSION

█ We review de novo whether an Indian tribe possesses sovereign immunity, *United States v. James*, 980 F.2d 1314, 1319 (9th Cir.1992); whether Congress has statutorily waived an Indian tribe's sovereign immunity, *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 921 (9th Cir.1995); whether the United States has waived its sovereign immunity, *Commodity Futures*

*Trading Commission v. Frankwell Bullion Ltd.*, 99 F.3d 299, 305 (9th Cir.1996); and whether dismissal for lack of subject matter jurisdiction was correct, *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000).

We address: (1) whether the United States' sovereign immunity has been waived or abrogated; and (2) whether the Tribe's sovereign immunity has been waived or abrogated.

## I.  Federal Sovereign Immunity

For Demontiney to state a claim against the United States in district court, he must establish privity of contract with the BIA and a waiver of federal sovereign immunity. We need not resolve privity because no waiver of federal sovereign immunity has been shown. Demontiney asserts waiver or abrogation of federal sovereign immunity arising from: (1) the Indian Self–Determination and Education Assistance Act; (2) the Contract Disputes Act; (3) the Prompt Payment Act; and (4) the Equal Access to Justice Act. We consider each, but none shows a waiver.

### A.  The Indian Self–Determination and Education Assistance Act

█ Demontiney argues that the Indian Self–Determination and Education Assistance Act ("ISDEAA") waives the United States' sovereign immunity for an action brought by Demontiney under the Contract Disputes Act. We disagree. The IS-DEAA's waiver of federal sovereign immunity is limited to "self-determination contracts" entered into by Indian tribes or tribal organizations and the government. Because Demontiney cannot establish that he or Earthwalker is a tribe or tribal organization, he could not have entered into a self-determination contract with the BIA.

In 1975, Congress passed the ISDEAA, Pub.L. No. 93–638, 88 Stat. 2203 (1975) (codified as amended principally at 25 U.S.C. § 450 *et seq.*). Congress incorporated into the ISDEAA findings that state in part:

> [T]he prolonged Federal domination of Indian service programs has served to retard rather than enhance the progress of Indian people and their communities by depriving Indians of the full opportunity to develop leadership skills crucial to the realization of self-government, and has denied to the Indian people an effective voice in the planning and implementation of programs for the benefit of Indians which are responsive to the true needs of Indian communities.

25 U.S.C. § 450(a)(1).

Congress enacted the ISDEAA to encourage Indian self-determination and tribal control over administration of federal programs for the benefit of Indians, by authorizing self-determination contracts between the United States, through the Secretaries of the Interior and of Health and Human Services, and Indian tribes. 25 U.S.C. §§ 450a, 450b, 450f.

In 1988, Congress amended the IS-DEAA to waive federal sovereign immunity in federal district court for certain contract claims. Indian Self–Determination and Education Assistance Act Amendments of 1988, Pub.L. No. 100–472, 102 Stat. 2285 (1988) (codified as amended at 25 U.S.C. § 450 *et seq.*):

> The United States district courts shall have original jurisdiction over any civil action or claim against the appropriate Secretary arising under this subchapter and, subject to the provisions of subsection (d) of this section and concurrent with the United States Court of Claims, over any civil action or claim against the Secretary for money damages arising under contracts authorized by this subchapter.

25 U.S.C. § 450m–1(a). Subsection (d) provides:

> The Contract Disputes Act (Public Law 95–563, Act of November 1, 1978; 92 Stat. 2383, as amended) shall apply to self-determination contracts, except that all administrative appeals relating to such contracts shall be heard by the Interior Board of Contract Appeals established pursuant to section 8 of such Act (41 U.S.C. 607).

25 U.S.C. § 450m–1(d).

These provisions grant the district court concurrent jurisdiction over suits against the federal government for contract claims arising under "self-determination contracts" as defined by the ISDEAA.

A self-determination contract is defined as:

> [A] contract (or grant or cooperative agreement utilized under section 450e–1 of this title) entered into under part A of this subchapter between a tribal organization and the appropriate Secretary for the planning, conduct and administration of programs or services which are otherwise provided to Indian tribes and their members pursuant to Federal law.

25 U.S.C. § 450b(j).

A tribal organization is defined, in pertinent part, as:

> [T]he recognized governing body of any Indian tribe; any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body or which is democratically elected by the adult members of the Indian community to be served by such organization and which includes the

maximum participation of Indians in all phases of its activities....

25 U.S.C. § 450b(*l*).

The parties agree that the underlying Tribe–BIA contract is a self-determination contract. Demontiney argues that Earthwalker also entered into a self-determination contract with the BIA. Demontiney relies on selected parts of statutory language in section 314 of 1990 amendments to the ISDEAA that he contends create a waiver of sovereign immunity for his contract claims against the United States:

> With respect to claims resulting from the performance of functions ... under a contract, grant agreement, or cooperative agreement authorized by the Indian Self–Determination and Education Assistance Act ... an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior ... while carrying out any such contract or agreement and its employees are deemed employees of the Bureau ... while acting within the scope of their employment in carrying out the contract or agreement: *Provided,* That after September 30, 1990, any civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and be afforded the full protection and coverage of the Federal Tort Claims Act....

Pub.L. No. 101–512, Title III, § 314, 104 Stat.1915, 1959–60 (1990) (codified at 25 U.S.C. § 450f notes) (citations omitted). Demontiney argues that the above language referring to an "Indian contractor" becoming part of the BIA in the Department of Interior and referring to claims being brought against any "Indian contractor" support his arguments of waiver of immunity. He argues that the ISDEAA provisions cited above, read together, authorize him as a private party to enter into a self-determination contract with the BIA and provide a waiver of federal sovereign immunity under the Contract Disputes Act pursuant to § 450m–1.

We reject Demontiney's argument. The language of section 314, including the term "Indian contractor," applies to tort claims brought under the Federal Tort Claims Act ("FTCA") against a contractor who has a self-determination contract. However, this language does not support a claimed waiver of sovereign immunity in a contract action such as Demontiney's.

We agree with the Eighth Circuit's reasoning in *FGS Constructors, Inc. v. Carlow,* 64 F.3d 1230 (8th Cir.1995), that Congress did not intend self-determination contracts to include contracts entered into by private parties. In *FGS Constructors,* the United States, through the BIA, and the Oglala Sioux Tribe entered into a self-determination contract pursuant to the ISDEAA to repair a dam located on an Indian reservation. *Id.* at 1231–32. The tribe entered into an agreement with a project engineer and a general contractor; the general contractor, in turn, hired FGS Constructors as a subcontractor to perform key repair and reconstruction work. *Id.* at 1232. FGS Constructors brought an action in district court against the United States under the FTCA for negligence of the general contractor imputed to the federal government. *Id.* The district court dismissed the claim against the United States for lack of subject matter jurisdiction. *Id.*

Affirming the district court's dismissal of the tort claim, the circuit court expressly considered the language of section 314 and held that the ISDEAA only waived

sovereign immunity for claims brought by tribal organizations that entered into self-determination contracts and did not contemplate suits by private parties. *Id.* at 1234. Quoting the definition of a self-determination contract in § 450b(j), which is restricted to contracts "between a tribal organization and the appropriate Secretary," the court concluded that the purpose and policy of the ISDEAA are best served if "Indian contractor" is limited to a "tribe-related organization that may itself enter into a self-determination contract, not a private party ... that has been retained to work on a project funded by a self-determination contract." *Id.* at 1234–35; *see also Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,* 154 F.3d 1117, 1123 (9th Cir.1998) (citing *FGS Constructors* and concluding that self-determination contracts only involve situations "arising pursuant to particular contracts between tribes and two departments within the federal government"); *Wooten v. Hudson,* 71 F.Supp.2d 1149, 1152–53 (E.D.Okla.1999) (holding that private individuals cannot enter into a self-determination contract); *Comes Flying v. United States,* 830 F.Supp. 529, 530 (D.S.D.1993).

This view is reinforced by the legislative history of the Indian Self–Determination and Education Assistance Act Amendments of 1988, which defines a self-determination contract as "an intergovernmental contract that is not a procurement contract. This definition recognizes the unique nature of self-determination contracts between the Federal Government and Indian tribal governments, or tribal organizations authorized by tribal governments to enter into such contracts with the Federal Government." S. REP. NO. 100–274, at 18 (1987), *reprinted in* 1988 U.S.C.C.A.N. 2620, 2637. To expand the definition of self-determination contracts to include private parties, contrary to the definition provided by Congress, would undermine tribal authority and the ISDEAA's goal to assist tribes "in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities." 25 U.S.C. § 450a(b).

Demontiney's claims for breach of contract do not arise under a self-determination contract; even if we assume that Demontiney is in contractual privity with the BIA by virtue of his contract with the Tribe, Demontiney is not a tribe or tribal organization and cannot be considered to be a party to a self-determination contract. Because Demontiney is not a party to a self-determination contract, he cannot take advantage of the ISDEAA's waiver of federal sovereign immunity for claims in district court. Although § 450m–1 waives sovereign immunity in district court for contract actions pertaining to disputes arising from self-determination contracts, nothing therein provides support for Demontiney's argument that a sovereign immunity waiver permits his claims against the United States in district court.[2]

Demontiney also contends that federal regulations passed pursuant to the ISDEAA governing self-determination contracts "contemplate a waiver of sovereign

---

**2.** Congress recently amended the ISDEAA to make changes to the administration of tribal welfare and construction projects. *See* Tribal Self–Governance Amendments of 2000, Pub.L. No. 106–260, 114 Stat. 711 (2000) (codified primarily at 25 U.S.C. § 458aaa *et seq.*). There is no indication that Congress intended the ISDEAA amendments to be given retroactive effect; the amendments state that "[e]xcept as otherwise provided, the provisions of this Act shall take effect on the date of the enactment of this Act." *Id.* at § 13, 114 Stat. 734 (codified at 25 U.S.C. § 458aaa note). Therefore, the legislation does not affect our disposition.

immunity by the United States to the extent that a contractor or Tribe becomes embroiled in litigation." We do not agree. The regulations cited by Demontiney require a tribe that enters a self-determination contract to comply with equal opportunity in hiring and to direct subcontractors to comply with such requirements. The regulations also allow a tribe to request that the United States join the tribe's litigation with subcontractors over equal opportunity issues to protect the United States' interest. Finally, the regulations require a tribe to maintain insurance and prohibit the insurance carrier from invoking the tribe's sovereign immunity as a defense. These regulations do not abrogate the United States' sovereign immunity.

## B. *Prompt Payment Act*

■ Demontiney contends that the Prompt Payment Act, 31 U.S.C. § 3901 *et seq.,* gives subject matter jurisdiction here. We disagree. The Prompt Payment Act is not an independent basis of jurisdiction. It provides for the payment of interest by the government on its debts. The district court correctly concluded that the Prompt Payment Act only applies in situations, not present here, where payment and amount of payment are not in dispute. *L & A Jackson Enters. v. United States,* 38 Fed. Cl. 22, 44–45 (1997), *aff'd sub nom. Jackson v. United States,* 135 F.3d 776 (Fed. Cir.1998). The Prompt Payment Act does not provide Demontiney with subject matter jurisdiction for his contract claims.

## C. *Equal Access to Justice Act*

■ Demontiney contends that the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, provides a waiver of the United States' sovereign immunity for his contract claims. The text of the statute does not support Demonti-

ney's argument. The statute states, in pertinent part:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

5 U.S.C. § 504(a)(1).

The Supreme Court has held that the Equal Access to Justice Act's waiver of sovereign immunity is limited: "The [Equal Access to Justice Act] renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity. Any such waiver must be strictly construed in favor of the United States." *Ardestani v. INS,* 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991); *see also Sorenson v. Mink,* 239 F.3d 1140, 1148 (9th Cir.2001). Because Demontiney has not prevailed on any claim, the Equal Access to Justice Act is not applicable and does not provide subject matter jurisdiction.

## D. *Contract Disputes Act*

■ Demontiney contends that the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.,* provides district court jurisdiction for his contract dispute. However, the Contract Disputes Act, in conjunction with the Tucker Act, 28 U.S.C. § 1491(a)(1) and the Little Tucker Act, 28 U.S.C. § 1346(a)(2), do not waive federal sovereign immunity for district court jurisdiction here. Instead, the statutes grant the Court of Federal Claims jurisdiction to adjudicate any contract claims Demontiney might have against the United States.

The Tucker Act provides jurisdiction in the Court of Federal Claims for claims against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The Little Tucker Act, as amended by the Contract Disputes Act, gives district courts concurrent jurisdiction with the Court of Federal Claims for:

> Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978.

28 U.S.C. § 1346(a)(2).

The Little Tucker Act does not give district courts jurisdiction for contract claims exceeding $10,000, and does not give district courts jurisdiction for claims covered by sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act. *Id.* The district court does not have jurisdiction over Demontiney's claims under the Little Tucker Act because (1) his claims under the subcontract-$185,419 for the unpaid balance alone-far exceeds the $10,000 limit; and (2) his claims arise, if at all, under section 10(a)(1) of the Contract Disputes Act [41 U.S.C. § 609(a)(1) ]. *See id.*

Here, any contract claim Demontiney might have against the United States would be covered by the Contract Disputes Act because he claims contractual privity with a federal executive agency, the BIA, and the contract concerns "the procurement of services" or "the procurement of construction, alteration, repair, or maintenance of real property." 41 U.S.C. § 602(a). *See also Janicki Logging Co. v. Mateer,* 42 F.3d 561, 565 (9th Cir.1994). Demontiney submitted his claim in writing to a contracting officer who rejected the claim, but Demontiney did not follow the Contract Disputes Act procedure of appealing the contracting officer's adverse decision to the agency board of contract appeals. *See* 41 U.S.C. §§ 605(a), 606. Demontiney also did not follow the alternative procedure of filing a claim in the Court of Federal Claims. *See* 41 U.S.C. § 609(a)(1). Instead, Demontiney filed his claims against the United States in federal district court. That court correctly concluded it lacked jurisdiction [3] and the court

---

**3.** Demontiney's reliance on additional precedent under the Contract Disputes Act to support district court jurisdiction is either without merit or waived. First, Demontiney cites a maritime case, *Hodgdon v. United States,* 919 F.Supp. 37 (D.Me.1996), for abrogation of sovereign immunity under the Contract Disputes Act. A provision of the Contract Disputes Act grants district courts jurisdiction over appeals of agency decisions involving maritime contracts. *See* 41 U.S.C. § 603. Because Demontiney's claims are not based on maritime law, *Hodgdon* and § 603 are inapplicable. Second, Demontiney relies on *RMI Titanium Co. v. Westinghouse Electric Corp.,* 78 F.3d 1125 (6th Cir.1996). In *RMI Titanium,* the district court dismissed an action for lack of subject matter jurisdiction, ruling that the Contract Disputes Act governed a subcontractor's contract claims against a non-government prime contractor of a government project. *Id.* at 1127. This case does not assist Demontiney. Finally, for the first time on appeal, Demontiney argues that *North Side Lumber Co. v. Block,* 753 F.2d 1482 (9th Cir.1985), supports district court jurisdiction here because it holds that the

ordered Demontiney's claims against the United States transferred to the Court of Federal Claims pursuant to 28 U.S.C. § 1631. *See Mendenhall v. Kusicko,* 857 F.2d 1378 (9th Cir.1988).[4]

### E. *Conclusion*

The United States has not waived its sovereign immunity to suit in district court, and Demontiney's only possible basis for federal court jurisdiction is now in the Court of Federal Claims.

## II. *Tribal Sovereign Immunity*

█ Demontiney contends that the Tribe has waived or had its sovereign immunity abrogated by Congress. The Supreme Court has repeatedly declared a presumption favoring tribal sovereign im-

munity. "Suits against Indian tribes are . . . barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991); *see also Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (Congressional abrogation of tribal sovereign immunity "cannot be implied but must be unequivocally expressed"). There is a strong presumption against waiver of tribal sovereign immunity. *Pan Am. Co. v. Sycuan Band of Mission Indians,* 884 F.2d 416, 419 (9th Cir.1989).

Demontiney advances four theories that he claims show waiver or abrogation of the Tribe's sovereign immunity: (1) the Earth-

---

"Contract Disputes Act does not necessarily restrict District Court jurisdiction over actions based on other extra contractual statutory obligations." We ordinarily do not consider issues raised for the first time on appeal, *Crawford v. Lungren,* 96 F.3d 380, 389 n. 6 (9th Cir.1996), and we decline to do so here.

**4.** The district court *sua sponte* transferred demontiney's contract action against the United States to the court of federal claims pursuant to 28 U.S.C. § 1631:

WHenever a . . . court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action or appeal could have been brought at the time it was filed. . . .
28 U.S.C. § 1631.

Demontiney argues that the district court erred by not making a privity determination to decide whether the court of federal claims would have jurisdiction over the contract claims before transferring the action.

Congress created a right of interlocutory appeal in the judicial improvements and access to justice act of 1988, Pub. L. No. 100–702, 102 Stat. 4642 (1988):

The United States Court of appeals For the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the united states

. . . granting or denying, in whole or in part, a motion to transfer an action to the united states court of federal claims under section 1631 of this title.
28 U.S.C. § 1292(D)(4)(A) (emphasis added).

Congress enacted § 1292(D)(4) "to facilitate expeditious review of intricate questions about tucker act jurisdiction." *Mitchell v. United States,* 930 F.2d 893, 895 (Fed.Cir. 1991). Congress created a right of interlocutory appeal in the federal circuit "[i]n the interests of resolving jurisdictional questions at the outset of litigation, and thereby avoiding wasteful and duplicative litigation on the merits in the wrong trial court." H.R. Rep. No. 100–889, at 52 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 6012. Another purpose was "[t]o ensure uniform adjudication of Tucker Act issues in a single forum." *Id.*

Demontiney's appeal of the *sua sponte* transfer creates the same challenges to judicial economy and uniformity as if the transfer was initiated by a motion to transfer. We do not have jurisdiction to review the transfer made by the district court pursuant to 28 U.S.C. § 1631, because "exclusive jurisdiction" of an appeal of that transfer rests with the Federal Circuit. *Taxpayers for Vincent v. Members of City Council,* 682 F.2d 847, 849 n. 1 (9th Cir.1982) (appellate jurisdiction is reviewed *sua sponte*), *rev'd on other ground*s, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).

walker–Tribe subcontract waives the Tribe's sovereign immunity for disputes arising under the subcontract; (2) the IS-DEAA abrogates tribal sovereign immunity; (3) the Tribe waived sovereign immunity by incorporating the Indian Civil Rights Act into its constitution; and (4) the absence of a "meaningful" tribal remedy creates a waiver of sovereign immunity.

## A. Contractual Waiver

■ Demontiney argues that the Tribe waived its sovereign immunity by the terms of its subcontract with Earthwalker, citing provisions from the July subcontract, the August subcontract, and the General Provisions contract incorporated into the August subcontract.

In the July subcontract, Demontiney cites: (1) two choice-of-law provisions, one indicating that the subcontract "shall be governed by and construed in accordance with the laws of the Chippewa Cree Tribe" and the other granting the "Chippewa Cree Tribal Court ... exclusive jurisdiction ... over disputes arising under the agreement" (paragraphs 9.6, 9.12); (2) a provision authorizing an award of reasonable attorneys' fees and other court costs for successful defense of a contract breach (paragraph 9.4); (3) a severability provision providing for the enforceability of the remaining provisions of the subcontract "[i]n the event any provision in this Contract shall be held invalid or unenforceable by a court of competent jurisdiction" (paragraph 9.5); and (4) a provision stating that "[a]ll remedies, either under this Contract, by law, or otherwise afforded to either party shall be cumulative, not alternative" (paragraph 9.2).

In the August subcontract, Demontiney cites provisions establishing the BIA as the contracting "executive agency" and giving the BIA a substantial role in the oversight of Earthwalker's performance under the subcontract.

In the General Provision contract, Demontiney cites: (1) a provision stating that "[n]othing in this contract shall be construed as ... [a]ffecting, modifying, diminishing, or otherwise impairing the sovereign immunity from suit enjoyed by the Chippewa Cree Tribe" (paragraph 2(a)); (2) a dispute resolution provision rendering the decision of the Business Committee final and conclusive "unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary" or grossly erroneous (paragraph 9(a)); (3) an indemnity and insurance provision requiring Demontiney to purchase insurance and requiring an insurance carrier to "waive[ ] any rights it may have to raise as a defense the Tribe's sovereign immunity from suit" (paragraph 7); (4) a default provision granting the Tribe authority to withhold payment due Earthwalker in an amount determined "necessary to protect the Tribe against loss because of outstanding liens" (paragraph 42); (5) a provision referring to the Contract Disputes Act to determine the rate of interest on all amounts payable by Earthwalker to the Tribe; and (6) numerous provisions subjecting the subcontract to federal acts and regulations including the Assignment of Claims Act of 1940, the Safety Standards Act, the Buy American Act, the Anti–Kickback Act, the Privacy Act, the Small Business Act, the Rehabilitation Act, the Clean Air and Water Acts, the Walsh–Healy Public Contracts Act, the Rehabilitation Act, and Federal Procurement regulations.

We agree with the district court's conclusion that "[a]t best, [these] provisions ... establish only the Tribe's willingness to face suit in tribal court" and not an explicit waiver of tribal immunity. The only express discussion of sovereign im-

munity, paragraph 2(a) of the General Provisions contract, indicates that the Tribe did not intend to waive its sovereign immunity. Paragraphs 9.6 and 9.12 of the July subcontract invoke tribal law and judicial remedies, and paragraph 9(a) of the General Provisions contract invokes tribal administrative remedies. These provisions support a waiver of sovereign immunity only for claims asserted in Tribal Court. Contrary to Demontiney's reading of paragraph 9.2 of the July subcontract concerning delay or omission of rights and remedies, this provision does not show any intention to appeal to nontribal jurisdiction. None of the other clauses adduced shows the Tribe's intention to surrender its sovereign immunity in district court. The terms of the subcontract do not show a clear intention of the Tribe to waive its sovereign immunity.[5]

## B. *The Indian Self–Determination and Education Assistance Act*

■ Citing 25 U.S.C. § 450f(c), which mandates that the government provide liability insurance for tribes in self-determination contracts and provides a limited waiver of tribal sovereign immunity, and § 450m–1, which gives district court jurisdiction for disputes between tribe and federal government under self-determination contracts, Demontiney contends that the ISDEAA abrogated tribal sovereign immunity. He claims abrogation not only for suits arising out of self-determination contracts but also for suits on subcontracts pursuant to such contracts. The argument Demontiney now asserts was not raised before the district court. We can consider issues of law raised for the first time on appeal, *In re America West Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir.2000), and we do so here because the legal issue does not depend on the factual record and is related to other issues we address.

Demontiney's argument is without merit because, as explained above, his suit does not arise out of a self-determination contract. Any effect of § 450f(c) is limited by the section to "contracts ... pursuant to this subchapter." § 450f(c)(1). Because Earthwalker did not enter into a self-determination contract with the Tribe, § 450f(c) is not applicable. Section 450m–1 similarly does not abrogate the Tribe's sovereign immunity because it restricts district court jurisdiction to suits "arising under contracts authorized by this subchapter." 25 U.S.C. § 450m–1(a).

The ISDEAA states that "[n]othing in this subchapter shall be construed as ... affecting, modifying, diminishing, or other-

---

5. The Supreme Court's decision in *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, —— U.S. ——, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001), finding a clear waiver of tribal sovereign immunity in contract arbitration provisions, is wholly consistent with our holding. There, the Court relied on two provisions of a contract between a tribe and a construction company to find sufficient evidence of a clear waiver of tribal sovereign immunity: (1) a clause stating that all contractual disputes should be resolved according to American Arbitration Association Rules and providing for enforcement of the arbitrator's award "in accordance with applicable law in any court having jurisdiction thereof"; and (2) a choice-of-law clause consenting to the law of the project location, Oklahoma. *Id.* at 1592–94. The referenced arbitration rules provided that "[p]arties to these rules shall be deemed to have consented" to enforcement of the award in federal and state court. *Id.* at 1593. Oklahoma law provides that an agreement calling for arbitration in the state confers jurisdiction on its courts for enforcement. *Id.* Here, the dispute resolution clause does not reference or incorporate procedures that provide for non-tribal jurisdiction for enforcement, the choice-of-law provisions contemplate exclusive tribal law and jurisdiction, and there is an express disavowal of waiver of tribal sovereign immunity.

wise impairing the sovereign immunity from suit enjoyed by an Indian tribe." 25 U.S.C. § 450n(1); *see also Pink v. Modoc Indian Health Project, Inc.,* 157 F.3d 1185, 1189 (9th Cir.1998).

We hold that the ISDEAA does not abrogate the Tribe's sovereign immunity in this action brought by Demontiney and Earthwalker.

### C. *Indian Civil Rights Act*

■ For the first time on appeal, Demontiney argues that the Tribe, by incorporating the provisions of the Indian Civil Rights Act ("ICRA") into its constitution and bylaws, has expressly waived its sovereign immunity for the enforcement of the due process protections found in ICRA. In our discretion, we reach the merits of this issue because its resolution does not depend on further development of the record, *In re America West Airlines,* 217 F.3d at 1165, and we conclude that Demontiney's argument necessarily fails.

Demontiney contends that ICRA due process protects an asserted "right to enforce a contract and meaningful review of contract rights ... cognizable under 25 U.S.C. § 1301." But, we have generally found federal court jurisdiction for alleged violations of ICRA only in habeas corpus actions, not in civil actions. *See* 25 U.S.C. § 1303; *see also Santa Clara Pueblo,* 436 U.S. at 69–72, 98 S.Ct. 1670; *Pink,* 157 F.3d at 1189. Moreover, Demontiney provides no support for the proposition that the Tribe's incorporation of ICRA into its constitution and bylaws shows an intent to waive sovereign immunity in federal court. Implying such an intent here would improperly undermine sovereign immunity for many Indian nations. We hold that ICRA does not waive the Tribe's sovereign immunity.

### D. *Inadequacy of Tribal Remedies*

Demontiney argues that a federal court has jurisdiction over a tribe under an exception to the sovereign immunity doctrine if tribal remedies are nonexistent. We reject this argument for two reasons.

First, Demontiney has not demonstrated that his tribal remedies are inadequate or nonexistent. Demontiney did not appeal the Tribal Court's dismissal of his action, the dismissal itself was without prejudice, and the Tribe contends that there are further tribal remedies available.

■ Second, even if Demontiney's tribal remedies are uncertain or inadequate, our precedent that recognizes the inadequacy of tribal remedies as a basis of federal jurisdiction is not applicable here. The case cited by Demontiney is inapposite, in part because it involves habeas review under ICRA. *See St. Mark's v. Chippewa Cree Tribe of Rocky Boy Reservation, Mont.,* 545 F.2d 1188, 1189 (9th Cir.1976) (per curiam) (holding that the need to exhaust tribal remedies for habeas review under ICRA is not an inflexible requirement, and that the district court can consider whether any meaningful tribal remedies exist). Because Demontiney's claims are civil and he does not pursue a habeas action under ICRA, inadequacy of tribal remedies does not effect a waiver of the Tribe's sovereign immunity. *See Johnson v. Gila River Indian Cmty.,* 174 F.3d 1032, 1035 (9th Cir.1999). As we explained in *Johnson:*

> As sovereign nations, Indian tribes possess common law immunity from suit in federal court. Accordingly, the district court correctly dismissed Johnson's claims against the Tribe pursuant to the Indian Civil Rights Act ("ICRA"), 25 U.S.C. §§ 1302(5) and 1302(8). The only recognized exception to a sovereign

immunity defense under the ICRA is a habeas corpus action. Because Johnson does not seek such relief, and the Tribe has not waived its sovereign immunity defense, the district court properly dismissed Johnson's claims against the Tribe.

*Id.* (internal citations omitted).[6]

Demontiney has not established federal court jurisdiction over the Tribe for his contract claims.

### III. CONCLUSION

We AFFIRM the district court's grant of the motions to dismiss of the Tribe and the United States.

**AFFIRMED.**

---

6. In the past, we have declined to follow *Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes*, 623 F.2d 682, 685 (10th Cir.1980), in recognizing a federal right of action for civil claims under ICRA where no other meaningful remedies are available. *See e.g., Johnson,* 174 F.3d at 1035 n. 2 (refusing to apply *Dry Creek* and noting that the Tenth Circuit has limited *Dry Creek* to extraordinary circumstances). We again decline to follow *Dry Creek* here.