*Dr. Lula Mae STAGO*
Petitioner-Appellee, Cross-Appellant
*vs.*
*WIDE RUINS COMMUNITY SCHOOL, Inc.*
Respondent-Appellant, Cross-Appellee

In the Supreme Court of the Navajo Nation

No. SC-CV-63-99

August 29, 2002

Stephen K. Smith, Esq., and Howard Brown, Esq., Flagstaff, Arizona, for Respondent-Appellant.

Lawrence A. Ruzow, Esq., Window Rock, Navajo Nation (Arizona), for Petitioner-Appellee.

Before YAZZIE, Chief Justice, and KING-BEN and FERGUSON, Associate Justices.

Opinion delivered by KING-BEN, Associate Justice.

On May 4, 2001, we held that the Navajo Nation Labor Commission (NNLC) did not have jurisdiction over Dr. Lula Mae Stago' s (Dr. Stago) claim that the Wide Ruins Community School, Inc. (Wide Ruins) violated the Navajo Preference in Employment Act (NPEA). Upon reconsideration we hold that Dr. Stago's NPEA claim falls outside the Federal Tort Claims Act (FTCA) and that the NNLC has jurisdiction over her claim.

In January 1998, Wide Ruins rejected the application of Dr. Stago in favor of another applicant. Dr. Stago filed suit against Wide Ruins with the NNLC, alleging violations of the Navajo Preference in Employment Act (NPEA), 15

N.N.C. §§ 601 *et seq.* The NPEA governs all employers in the Navajo Nation, including those under federal contracts. 15 N.N.C. §604(A). The NNLC entered an interim order finding that Wide Ruins violated the NPEA, 15 N.N.C. §604(c) (3), when it did not select the Navajo with the "best qualifications" for the executive director position. *Stago v. Wide Ruins Community School, Inc.,* Interim Order, NNLC No. 98-038 (decided Aug, 20, 1999).

On December 10, 1999, Wide Ruins appealed to this Court contending, among other things, that the NNLC's jurisdiction is preempted by the 1990 amendments (Section 314) to the Indian Self-Determination and Education Assistance Act (ISDA).[1] Under Section 314, claims brought against programs authorized by the ISDA or the Tribally Controlled Schools Act of 1988 (TCSA)[2] become claims against the United States and are defended by the Attorney General in federal court. On May 4, 2001, this Court decided in *Stago v. Wide Ruins Community School,* 8 Nav. R. 118 that: (a) Wide Ruins is a tribal organization operating a tribally-controlled school under the TCSA; (b) under Section 314, a suit against Wide Ruins is a suit against the federal government and must be brought in federal court and; (c) the NNLC therefore lacked jurisdiction to hear Dr. Stago' s NPEA claim.

On May 16, 2001, Dr. Stago asked this Court to reconsider our prior decision. We granted the petition to reexamine how Section 314 applies to an Indian tribe, such as the Navajo Nation, that has enacted a comprehensive employment code. After careful consideration we conclude that our previous decision was in error. We find that Section 31.4 does not divest the NNLC of jurisdiction to hear NPEA claims against tribally controlled schools such as Wide Ruins.

The sole issue before the Court is whether Section 314 of the ISDA Amendments is applicable so as to remove jurisdiction from the NNLC over an employment claim made under the NPEA against a tribally controlled school.

Since we are interpreting a federal statute, we follow the rules of

1 Section 314 establishes that, "With respect to claims resulting from the performance of functions ... under a contract, grant agreement, or any other agreement or compact authorized by the [ISDA] ... or by the [TCSA], an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior or the Indian Health Service in the Department of Health and Human Services while carrying out any such contract or agreement and its employees are deemed employees of the Bureau or Service while acting within the scope of their employment in carrying out the contract or agreement: Provided: That ... [A]ny civil action or proceeding involving such claims brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and be afforded the full protection and coverage of the Federal Tort Claims Act " The amendments are: § 314 of Pub. L. 101-512, 104 Stat. 1915, 1959-60, codified as amended at 25 U.S.C. § 450f Historical and Statutory Notes. The ISDA is: Pub. L. 93-638, 88 Stat. 2203, codified as amended at 25 U.S.C. §§ 450 *et seq.*

2 Pub. L. 100-297, 101 Stat. 385, codified at 25 U.S.C. §§ 2501-2511.

interpretation established and to examine the statute as a whole. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). *See also, Office of Navajo Labor Relations v. Navajo Housing Authority*, 7 Nav. R. 50, 51 (Nav. Sup. Ct. 1993). *United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 542 (1940).

The relevant language of Section 314 provides that "any civil action or proceeding ... covered by this provision" will have three characteristics: (1) it will "be deemed to be an action against the United States *and*"; (2) it "will be defended by the Attorney General *and*"; (3) it will "be afforded the full protection and coverage of the Federal Tort Claims Act." Section 314 (emphasis added).

In order to understand this section, we look to the intent of the relevant legislative body. *American Trucking*, 310 U.S. 534 (1940). A primary resource for determining Congressional intent is the legislative history of a statute. *Blum v. Stenson*, 465 U.S. 886, 896 (1984). *See also, PC&M Construction Co. v. Navajo Nation*, 7 Nav. R. 58, 59 (Nav. Sup. Ct. 1993), *Navajo Nation Division of Resources v. Spencer*, 5 Nav. R. 109, 111 (Nav. Sup. Ct. 1986).

The Indian Self-Determination and Education Assistance Act (ISDA) was enacted in 1975 to provide for Indian control of federal programs that were poorly serving Indian communities. Congress authorized the subcontracting of some programs to tribal governments and organizations. 25 U.S.C. §§ 450, 450a & 450f. Under the ISDA, tribes and tribal organizations can contract with the Secretary of the Interior or the Secretary of Health and Human Services to administer programs or services that would otherwise have been administered by the federal government, such as education, medical services, construction and law enforcement.[3]

Under the original 1975 version of the ISDA, the FTCA was not involved, and tribes were liable directly for claims arising from the programs. However, in response to the high cost of insurance to tribes who had to defend themselves against these claims, Congress enacted Section 314 of the ISDA, making the federal government responsible for that litigation as part of the FTCA. GENERAL ACCOUNTING OFFICE, FEDERAL TORT CLAIMS ACT: ISSUES AFFECTING COVERAGE FOR TRIBAL SELF DETERMINATION CONTRACTS 6 (2000) (GAO REPORT).

It has been generally assumed that Section 314 covers the same claims that the FTCA covers. The House Report on Section 314 described it as an application of the FTCA to the tribes: "[S]ince the Department delayed taking action to respond to [the directive of Pub. L. 105-277], the Committee has no choice but to provide the required liability coverage on a permanent basis by extending the Federal Tort Claims Act coverage." H.R. Rep. No. 101-789, 101st Cong., 2d Sess. 72 (1990). The federal courts have used similar language. *Comes Flying v. United*

---

3 S. Bobo Dean & Joseph H. Webster, *Contract Support Funding and the Federal Policy of Indian Tribal Self-Determination*, 36 TULSA L.J. 349 (2000), and Thomas P. Schlosser, *Should the Sovereign Control the Purse?*, 24 AM. IND. L. REv. 309 (2000).

*States*, 830 F.Supp. 529, 530-31 (D.S.D. 1993).[4]

The tribes also seem to have assumed that the coverage of Section 314 is limited to claims covered by the FTCA. Many tribes have therefore purchased liability insurance believing they are vulnerable to non-FTCA claims. The General Accounting Office noted that, "tribes still need some private insurance as protection against claims not covered under the FTCA." GAO REPORT 16. In light of the virtual unanimity concerning the coverage of Section 314, we conclude that Congress intended it to cover the same claims covered by the FTCA. This leaves open the question of whether Congress intended claims based on tribal employment statutes to be brought under the FTCA in federal court with the United States as a defendant.

In order to determine the role of Section 314 of the ISDA, we must look at the purpose and role of the FTCA in claims against the United States. In general, governments are immune from suit. *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S.471, 475 (1994). By waiving Sovereign immunity in the FTCA, the federal government makes it possible for a Plaintiff to sue the government, with significant restrictions. First, claims brought under it may only be brought in federal district court. 28 U.S.C. § 1346(b)(1). Second, those claims must be brought,

> against the United States, [2] for money damages…, [3] for injury or loss of property, or personal injury or death, [4] caused by the negligent or wrongful act or omission of any employee of Government, [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1). Finally, some claims which involve a "discretionary function" are specifically excluded from the waiver of sovereign immunity. 28 U.S.C. § 2680.

A claim may be brought under the FTCA only if it is "cognizable" meaning that it alleges each of the six elements. *Meyer*, 510 U.S. at 477, 478. If it does, the FTCA constitutes the sole available remedy as a general rule. *Id.* at 476. There is an exception to that general rule, which is the "narrowly drawn statute"

---

4  *See also*, *FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230, 1234 (8th Cir. 1995), *cert. denied*, 517 U.S. 1134 (1996) (describing Section 314 as amending the ISDA, "to allow recovery under the Federal Tort Claims Act for certain claims arising out of the performance of self- determination contracts.); *Red Elk v. United States*,6 2 F.3d 1102, 1103 n.1 (8th Cir. 1995) (stating, without discussion, that according to Section 314, various tribal organizations" are deemed to be part of the Bureau of Indian Affairs.. .for purposes of the [Federal Tort Claims] Act.. ..); *Val-U Construction Co. v. United States*, 905 F.Supp. 728, 732 n.2 (D.S.D. 1995) (noting that under Section 314, "the Rosebud Sioux Tribe is deemed an employee of the [federal] government for purposes of the FTCA." (internal citations omitted)).

rule. Particularly with claims brought by federal employees, the United States Supreme Court has held that claimants must bring their suits under the more specific statutory remedy. *Brown v. General Services Administration*, 425 U.S. 820, 834-5 (1976).[5] This applies even if the claim would have been cognizable under the FTCA. *American Postal Workers*, 940 F.2d at 709.

The kind of employment claim that may be brought under the FTCA is then quite limited. The claim must be cognizable under the FTCA and not fall under a more narrowly drawn waiver of federal sovereign immunity. Even if a claim may be brought under the FTCA, the discretionary function doctrine may deprive the Plaintiff of her remedy. In the remaining sections, we show how the reasoning behind these requirements affects the proper forum for NPEA claims.

Dr. Stago also argues that Section 314 of the ISDA does not apply to a Navajo employment code. She relies on the fact that Congress explicitly affirmed the authority of tribal employment statutes at Section 450e of the ISDA. Subsection (c) established that,

> Notwithstanding subsection (a) and (b) of this section [which set a floor for wages and require that Indian contractors be given preference in self-determination contracts], with respect to any self-determination contract, or portion of a self-determination contract, that is intended to benefit one tribe, *the tribal employment or contract preference laws adopted by such tribe shall govern* with respect to the administration of the contract or portion of the contract.

25 U.S.C. § 450e (c) (emphasis added). She argues that this language indicates that Congress intended tribal employment statutes to be enforceable. If Section 314 is applied to claims based on tribal employment statutes, she contends, persons with claims will not be able to bring those claims in tribal courts, but rather would be required to bring them in federal court. However, the FTCA would bar the federal court from applying tribal law making tribal employment statutes unenforceable. This argument points out a fatal flaw. Dr. Stago's claim would not be cognizable because in order for FTCA to apply, the six elements specified by section 1346 (b) cited above, must be alleged. Specifically, it must be alleged that the U.S. would be liable to the claimant in accordance with the law of the place where the act or omission occurred. Because Dr. Stago's claim is based on a NPEA violation at the Wide Ruins Community School, an Arizona based school, she would have to file a FTCA claim in an Arizona Federal District Court. In that

5 *See also, American Postal Workers Union v. United States Postal Service*, 940 F.2d 704 (D.C. Cir. 1991) (holding that where a federal employee is covered by the Federal Employees Compensation Act, she may not sue under the FTCA); *Daly v. Department of Energy*, 741 F.Supp. 202, 205 (D.Colo. 1990) (finding that where the Civil Service Reform Act of 1978 provides a remedy, a federal employee may not sue under any other waiver of federal sovereign immunity); *Premachandra v. United States*, 574 F .Supp. 365, 366 (E.D.Mo. 1983), aff'd per curiam, 739 F.2d 392 (1984) ( holding that if compensation is available under the Merit Systems Protection Board, a federal employee may not sue under the FTCA).

jurisdiction, only state law would be applicable, not the NPEA and Stago would have no claim. The language of Section450e (above) suggests that this was not the intention of Congress. Dr. Stago's NPEA claim also would not be cognizable because she has not alleged negligence, one of the six elements required in order that her claim be cognizable.

Wide Ruins insists that any civil claims, including Dr. Stago's NPEA claim brought against grant or contract programs arising out of the performance of functions, are covered under Section 314, even non-FTCA claims. However, we have already concluded that Section 314 covers only FTCA claims.

We are faced with having to determine whether Dr. Stago's NPEA claim is covered by Section 314 of the ISDA which extends FTCA coverage to Indian tribes, tribal organizations or Indian contractors authorized by ISDA or the TCSA. Our review encompasses the intent of Congress when it enacted ISDA, especially Section 450e.

We find it helpful to examine three possible intentions that Congress may have had with regard to employment claims based on tribal law. First, Congress may not have intended tribal employment statutes to be enforceable against 638-contract organizations. Second, Congress may have intended tribal employment statutes to provide a cause of action against the United States in federal court under Section 314. Third, Congress may have intended tribal employment statutes to be enforceable directly against 638-contract organizations in tribal court.[6]

The first possibility, that Congress intended to render tribal employment laws unenforceable against 638-contract organizations, is the least likely. At Section 450e of the ISDA, Congress clearly expressed its desire that tribal employment statutes play a role in 638-contracts. Interpreting Section 314 in a manner that deprives persons of a forum for their claims would contradict this affirmation of tribal employment laws.

The second approach, requiring statutory employment claims to be brought in federal court under the FTCA, raises three questions: (1) choice of law; (2) the cognizability of statutory employment claims; and (3) exclusion by the "discretionary function" exception to the FTCA.

Under Section 1346(b) of the FTCA, the United States is liable under circumstances where a private person would be liable "in accordance with the law of the place where the act or omission occurred." 25 U.S.C. § 1346(b). Generally, "law of the place" has been taken to mean state law. However, whether the traditional approach to "law of the place" applies when the tort occurs on an

---

6 Because tribal sovereign immunity is retained unless waived, each tribe will be free to determine for itself whether it desires to waive its immunity for the purposes of employment suits. We do not here consider the extent to which the Navajo Nation has rendered itself amenable to suit under the NPEA and the Navajo Nation Sovereign Immunity Act. 1 N.N.C. §§ 551-555.

Indian reservation is an open question. The federal courts have usually assumed without discussion that the "law of the place" means state and not tribal law. *See e.g., Red Elk v. United States*, 62 F.3d 1102 (8th Cir. 1995); *Seyler v. United States*, 832 F.2d 120 (9th Cir. 1987), *Bryant v. United States*, 565 F.2d 650 (10th Cir. 1977); *Val-U Construction Co. v. United States*, 905 F.Supp 728 (D.S.D. 1995). However, two district courts in three recent cases have more thoroughly analyzed the issue, with conflicting results.

The New Mexico Federal District Court recently held, analogizing tribal law to the territorial laws of Guam and Puerto Rico, that tribal law defined the "law of the place." *Cheromiah v. United States*, 55 F.Supp.2d 1295, 1302, 1305 (D.N.M. 1999). However, five months earlier, in an almost identical case, the court found the "law of the place" to be the law of the state. *Louis v. United States*, 54 F.Supp.2d 1207, 1210 (D.N.M. 1999). Finally, the Arizona District Court explicitly rejected the reasoning in *Cheromiah* holding that "law of the place" means law of the state. *Bryant v. United States*, 147 F.Supp.2d 953, 960 (D. Ariz. 2000). While a federal court pursuant to *Cheromiah* would consider NPEA claims, Dr. Stago would have to bring her claim in the Arizona Federal District Court, which recently held the law of the place to be the law of the state. Dr. Stago would have no claim under Arizona state law.

Even if tribal law applied as law of the place, such as found in *Cheromiah*, a claimant still faces several hurdles. The federal court would have to determine whether such claims are properly "cognizable" under the FTCA. A cognizable claim must allege negligence. 28 U.S.C. §1346(b). *See also, Laird v. Nelms*, 406 U.S. 797 (1972); Meyer, 510 U.S. 471. Many NPEA claims would not be cognizable under the FTCA because they would fail to allege negligence because the NPEA does not require negligence. Further, the FTCA only allows claims for monetary damages. 28 U.S.C. §1346(b). An NPEA claim for injunctive relief would not be cognizable. If a NPEA claim is not cognizable under the FTCA, the NPEA becomes unenforceable.

Finally, if a court found a NPEA claim to be cognizable under the FTCA, there is the final problem of the "discretionary function" exception to the FTCA waiver of sovereign immunity. The courts have consistently held that decisions to hire and fire fall squarely within the "discretionary function" exception. Decisions about hiring generally involve "the weighing of individual backgrounds, office diversity, experience and employer intuition" and "are of the nature and quality that Congress intended to shield from tort liability." *Tonelli v. United States*, 60 F.3d 492 (8th Cir. 1995) (internal citations omitted).[7] Most NPEA claims are

---

7 *See also, Val-U Construction Co. v. United States*, 905 F.Supp.7 28, 736 (D.S.D. 1995) ("The case law clearly demonstrates that selection and/or replacement of employees or contractors requires choice and/or judgment, and falls within the discretionary function exception to the FTCA."); *Daly v. Department of Energy*, 741 F. Supp. 202,206 (D. Colo. 1990)( "Employment decisions are discretionary, within the meaning of the FTCA's discretionary function exception.").

about hiring and firing and would likely fall within the discretionary function exception.[8]

In the above cases, persons claiming violations of the NPEA would be left without a forum for their claims. The lack of a remedy under the FTCA does not make a claim uncognizable under the FTCA. *Big Owl v. United States*, 961 F.Supp. 1304 (D.S.D. 1997). However, the lack of a remedy, coupled with the choice of law problems and the likelihood that a NPEA claim would not be cognizable under the FTCA, suggest that the overall effect of forcing a claimant to bring suit in the federal courts would be to render tribal employment laws unenforceable. We therefore find the second possibility, like the first, to be an unlikely interpretation of the scope of Section 314.

The third approach - finding tribal laws to be directly enforceable against the 638-contract organizations - is the only approach that remains. We find that it fits both the statutory language and the legislative history. This approach does not require us to assume that Congress intended both that tribal employment statutes govern and that they be unenforceable. Further, it makes tribal employment statutes comparable to federal employment statutes. A tribal employee who is covered by 25 U.S.C. § 450i (allowing employees who leave federal employment in order to work for tribal organizations to retain their federal retirement benefits and their coverage under the Federal Employees' Compensation Act) may not bring employment claims against 638-contract organizations under Section 314. Rather, she must bring her claim against the federal government under FECA, the more narrowly drawn statute. *Pourier v. United States*, 138 F. 3d 1267 (8th Cir. 1998). Like FECA, the NPEA is a more narrowly drawn statute. We find that NPEA claims should function in a manner analogous to FECA claims. However, while FECA provides access to the federal courts, the NPEA provides access to tribal courts.

The statutory language, legislative history and overall purpose of the ISDA, lead us to conclude that Congress did not intend to make tribal employment laws unenforceable. To the contrary, we find that employment claims based on Navajo law must be brought directly against 638-contract organizations in Navajo court. We therefore VACATE our prior decision and hold that NNLC has jurisdiction over NPEA claims against the Wide Ruins Community School.

8 The explicit language of the NPEA, requiring that "[a]mong a pool of applicants or candidates who are solely Navajo and meet the necessary qualifications, the Navajo with the best qualifications shall be selected or retained, as the case may be," NNC § 604(C)(3), on the face of it specifically prescribes a course of action for an employer to follow. Its clear directive may therefore indicate that the "discretionary function" exception should not apply. However, the determination of what constitutes "the best" under any particular circumstance requires an act of judgment, one that involves policy. Therefore, the directive of the NPEA will likely be found to require the very sort of judgment that the "discretionary function" exception protects. *See United States v . S.A. Empresa de Viacao Rio Grandense (Varig Airlines)*, 467 U.S. 797, 811 (1984).