*Johnson NELSON, et al.*
Plaintiffs-Appellants
*vs.*
*PFIZER, Inc., et al.*
Defendants-Appellees
In the Supreme Court of the Navajo Nation

No. SC-CV-01-02

November 17, 2003

Randolph H. Barnhouse, Esq., Albuquerque, New Mexico, William R. Keeler, Esq., Gallup, New Mexico, and Michael Gallagher, Esq., and John Kim, Esq., Houston, Texas, for Appellants.

Michael H. Hinson, Esq., and Franklin H. Hoover, Esq., Flagstaff, Arizona, for Appellees.

Before FERGUSON, Acting Chief Justice, and BEDONIE, Associate Justice.

Opinion delivered by FERGUSON, Acting Chief Justice.

This is a products liability case that was dismissed by the Window Rock District Court for lack of subject matter jurisdiction. It concerns the prescription drug Rezulin, which had been used to treat diabetes, a disease prevalent among Native Americans. The question is whether the district court has subject matter jurisdiction over the claim. We hold that subject matter jurisdiction is proper in this case and therefore reverse the district court.

For purposes of its ruling the district court took the following facts in Appellants' complaint to be true. Appellees, non-Indian pharmaceutical companies, manufactured and distributed the drug. All Appellants except one are enrolled members of the Navajo Nation and all reside within the Navajo Nation. Appellants were treated for diabetes by medical professionals who prescribed the drug to them. The prescriptions were made, the drug provided and/ or Appellants took the drug within the Navajo Nation.

This case comes to us based on the parties' motions before the district court.

Appellees filed a motion to dismiss under Rule 12(b)(1) of the Navajo Rules of Civil Procedure, contending the court lacked subject matter jurisdiction over the complaint. Alternatively, Appellees' motion asked the court to abstain from hearing the case because Appellants should litigate their claims in an existing Multidistrict Litigation case concerning the drug already pending in the United States District Court for the Southern District of New York. Following the issuance of a United States Supreme Court case, *Nevada v. Hicks*, 533 U.S. 353 (2001), Appellant moved the court to allow it to engage in limited discovery to seek evidence relevant to the court's subject matter jurisdiction.

At a hearing the district court ruled on the motions. It denied Appellees' request to abstain and Appellants' request to allow limited discovery. It granted Appellees' motion to dismiss by applying *Montana v. United States*, 450 U.S. 544 (1981) and by finding that the exceptions to Montana were not met. This appeal followed.

Appellants contend the district court erred when it applied Montana and its exceptions to claims for injuries suffered on tribal land.[1] Appellees argue that the district court correctly used *Montana* and properly found that Appellants failed to fulfill either of its exceptions.

## II

### A

The question in this case is the scope of the district court's civil jurisdiction over claims by Navajo Nation members against non-Indians. Our district courts are courts of general jurisdiction under the Navajo Nation Code, 7 N.N.C.

---

[1] Tribal land includes both land held in trust by the United States, whether for the Navajo Nation or individual members, and land held in fee by the Navajo Nation or individual members.

§ 253, but their jurisdiction is limited by federal statutes and by United States Supreme Court case law. Under these authorities a tribal court has subject matter jurisdiction over non-Indians from several sources. A tribe may exercise its broad inherent sovereignty over non-Indian conduct anywhere within its territory. *United States v. Wheeler*, 435 U.S. 313, 323 (1978). Federal and state statutes, regulations, and intergovernmental agreements may acknowledge or delegate tribal authority over non-Indians. *E.g.* Indian Child Welfare Act, 25 U.S.C. § 1901. Treaties recognize some authority over non-Indians not otherwise within a tribe's inherent sovereignty. *Means v. Chinle District Court*, 7 Nav. R. 383 (Nav. Sup. Ct. 1999). A tribe's authority as landowner provides additional authority over non-Indians who enter tribal lands. *Cohen's Handbook of Federal Indian Law* 252 (1982 Ed.).

Appellants rely on two of these sources of tribal authority: recognition by treaty and inherent sovereignty. Appellants contend the Treaty of 1868 and, or inherent sovereignty authorizes subject matter jurisdiction over its products liability case against Appellees. Because we decide that inherent sovereignty permits jurisdiction over this case we do not reach the treaty issue.

### B

The District Court below applied *Montana* directly, and held that Appellants failed to fulfill either exception. The threshold question is whether the test adopted by the United States Supreme Court in *Montana, supra*, applies regardless of the status of the land within the Navajo Nation. Should jurisdiction of Navajo courts over this type of case depend on meeting one of the two exceptions to the *Montana* test? Or should subject matter jurisdiction exist whenever non-Indian activity occurs on tribal land? The district court assumed for purposes of Appellees' motion that the prescriptions for the drug, the provision of the drug and/ or ingestion of the drug occurred on tribal land within the Navajo Nation.

In *Montana*, the United States Supreme Court (U.S. Supreme Court) held that tribes generally lack jurisdiction over non-Indians on non-Indian owned fee land within a reservation. 450 U.S. at 565. The Court stated, however, that a tribe did have jurisdiction under either of two exceptions. *Id.* at 565-66. We have applied these exceptions to cases involving non-Indian fee land. *See Manygoats v. Atkinson Trading Company, Inc.*, 8 Nav. R.321, 333–35 (Nav. Sup. Ct. 2003); *In re Atkinson Trading Company, Inc.* 7 Nav. R. 275,282–287 (Nav. Sup. Ct. 1997). We discuss each exception in turn.

The first exception allows jurisdiction if a non-Indian has a "consensual relationship" with the Navajo Nation or its members.

> A tribe may regulate through taxation, licensing, or other means, the activities of nonmembers who enter into consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements

*Id.* at 565. Though undefined, a "consensual relationship" includes private

commercial transactions but not the provision of fire, police and ambulance services by a tribe, *Atkinson v. Shirley*, 532 U.S. 645,655 (2001), or the receipt of a tribal search warrant by state law enforcement officers, *Hicks*, 533 U.S. at 379 n.3. Further, if there is a consensual relationship the exercise of tribal authority must have a "nexus" to that relationship. *Atkinson*, 532 U.S. at 656. Therefore "a nonmember's consensual relationship in one area does not trigger tribal civil authority in another[.]" *Id.*

The second exception requires that the non-Indian activity have a "direct effect" on the Navajo Nation. Authority over non-Indians exists "when [their] conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 566. Though the language of the exception suggests broad authority over non-Indian activity that harms the tribe, jurisdiction is proper only where 'necessary to protect tribal self-government or to control internal relations." *Atkinson*, 532 U.S. at 658. Even then, the "direct effect" exception does not permit jurisdiction "wherever it might be considered necessary," but only where the conduct is severe enough to actually imperil the Navajo Nation. *Id.* at 657 n. 12.

Examination of the *Montana* test is necessary in this case because of *Hicks, supra.*

Until *Hicks*, it was clear that the *Montana* test only applied when the non-Indian activity occurred on non-Indian owned fee land or on certain types of rights-of-way considered the equivalent of fee land. *See Montana; Strate v. A-1 Contractors*, 520 U.S. 438 (1997) (right-of-way owned by State of North Dakota subject to *Montana*); *Atkinson* (fee parcel within Navajo Reservation); *see also, El Paso Nat'l Gas v. Neztsosie*, 526 U.S. 473,483 n. 4 (1999) (stating that *Montana* test not necessary because activity occurred on trust land within Navajo Reservation); *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324 330-31 (1983) (same on Mescalero Apache Reservation). *Hicks* was a civil rights claim against state law enforcement officers who conducted a search of the plaintiffs home for evidence of an alleged off-reservation crime. Importantly, the tribal member's home was located on an allotment held in trust by the United States. *State v. Hicks*, 196 F.3d 1020,1022 (9th Cir. 1999).

In *Hicks*, the U.S. Supreme Court referred to *Montana* as the "pathmarking case" on tribal authority, and the main opinion stated that *Montana* "implied that the general rule . . . applies to both Indian and non-Indian land." 533 U.S. at 360.

> The ownership status of the land . . . is only one factor to consider in determining whether regulation of the activities of nonmembers is necessary to protect tribal self-government or to control internal relations.

*Id.* The court also stated that "the existence of tribal ownership is not alone enough to support jurisdiction over nonmembers." *Id.* The court applied the Montana exceptions to the facts. The court concluded there was no consensual relationship, stating that the state officers' request for a tribal search warrant

was not a private relationship subject to the exception. *Id.* at 359 n.3. The court also concluded that tribal authority over the state defendants was not necessary to protect tribal self-government under the second exception. *Id.* at 364.

While *Hicks* applied *Montana* to a certain type of non-Indian activity on trust land, the U.S. Supreme Court explicitly restricted its holding and left open the issue of general civil authority. It stated that "[o]ur holding in this case is limited to the question of tribal-court jurisdiction over state officers enforcing state law." *Id.* at 358 n. 2. Therefore, according to the court, the holding "leave[s] open the question of tribal-court jurisdiction over nonmember defendants in general."[2] *Id.*

Courts that have considered *Hicks* in tribal land cases have rejected the application of *Montana*. The Ninth Circuit held that the Montana rule does not apply to jurisdiction over a non-member for an accident on a Bureau of Indian Affairs road over trust land. *McDonald v. Means*, 309 F.3d 530, 540 (2002). That court specifically concluded that the limitation of *Hicks* to its facts continued the general rule that Montana still applies only on non-Indian fee land. *Id.* In a case similar to this one the Mississippi Choctaw Tribal Court made the same conclusion. *Williams v. Parke-Davis*, No. CV 1142-01, slip op. at 12 (January 2, 2003).

The implications of *Montana* for the Navajo Nation's power over its territory are clear. A rule requiring the application of Montana to all land restricts judicial authority over non-Indian conduct. We take judicial notice of the fact that trust land and tribally owned fee land comprise virtually all land within the Navajo Nation. There are many non-Indian actors who impact the Navajo Nation in various and significant ways that may escape the authority of the Navajo Nation if our courts are required to apply the *Montana* exceptions to every civil case involving non-Indians. Judicial resources would be stretched if every case brought against a non-Indian required a detailed analysis of the various consensual relationships or direct effects on the Navajo Nation merely to establish jurisdiction. Further, application of *Montana* to every civil case with a non-Indian defendant undermines the federal policy encouraging the development of tribal courts. *See Iowa Mutual Ins. Co. v. La Plante*, 480 U.S. 9, 15 (1987) ("Tribal courts play a vital role in tribal self-government .. and the federal government has consistently encouraged their development.") (internal citations omitted). Finally, our responsibility to protect the sovereignty of the Navajo Nation counsels that we not surrender authority unnecessarily.

Based on these considerations, and the explicit restrictions in *Montana* and later cases, including *Hicks*, we decline to extend *Montana* to activity on tribal land, notwithstanding any previous suggestions to the contrary. *See Office of Labor Relations ex rel. Jones v. Central Consolidated School District No. 22*, 8 Nav. R.

---

2  Both Justices Ginsburg and Souter also recognized the limitation of the holding in their concurring opinions. *Hicks*, 533 U.S. at 375-76, 386.

234, 240–41 (Nav. Sup. Ct. 2002).[3] *Hicks* applies *Montana* in the unique situation where the sovereign interests of a state government enforcing state criminal law are at issue, and no further. We decline to extend *Hicks* beyond the United States Supreme Court's own limitation. We note that the United States Supreme Court has previously used reasoning in Indian cases that it has abandoned in later ones. *See Brendale v. Confederated Tribes and Bands of Yakima Indian Nation*, 492 U.S. 408 (1989); *Rice v. Rehner*, 463 U.S. 324 (1987).

While we rule here that *Montana* does not apply, we do not want to discourage district courts in their discretion to consider it when establishing their subject matter jurisdiction. Therefore district courts, in their discretion, can allow parties to engage in discovery on the *Montana* exceptions and rule on whether such exceptions are met. *Cf. Central Consolidated*, 8 Nav. R. at 8 (authorizing Navajo Nation Labor Commission to make factual findings concerning fulfillment of *Montana* on remand). A conclusion that the exceptions are not met will not end the analysis, but fulfillment of either one will satisfy the lower threshold we hold applies today.

### C

Turning lastly to a notice of supplemental authority filed by Appellees on *Ford v. Todocheene*, 258 F. Supp.2d 1038 (D. Ariz. 2002), we believe one point made in the case should be mentioned. The federal district court distinguished the case from *McDonald v. Means* by stating that the effect of rejecting *Montana* would be that "all product liability torts, in fact all litigation, would be subject to tribal court jurisdiction if the injury occurred on Indian land - - and solely because it occurred on Indian land." *Todocheene*, 258 F. Supp.2d at 1049. Before *Hicks*, of course, there was no question that tribal courts had jurisdiction over such cases.

This hyperbole causes unnecessary excitement, as this is not always the case. Our courts, like other courts, must have both subject matter jurisdiction and personal jurisdiction to properly hear a case. *Yazzie v. Yazzie*, 5 Nav. R. 66, 68 (Nav. Sup. Ct. 1985). Though, as we hold today, our subject matter jurisdiction over matters occurring on tribal land is broad, that does not mean our courts may hear any case with some impact on tribal members. Personal jurisdiction over the defendant is still required. *Sells v. Espil*, 6 Nav. R. 195, 197 (Nav. Sup. Ct. 1990). We make no comment on whether due process requirements will allow

---

3 In *Central Consolidated* the exact issue before us was whether the Labor Commission lacked jurisdiction over the school district because of its status as a subdivision of the State of New Mexico. 8 Nav. R. at 237. We noted that the facts in the record concerning jurisdiction were incomplete, and allowed the Office of Navajo Labor Relations to move for remand to establish more facts before the Commission. *Id.* at 241. Though we discussed jurisdiction over the school district in terms of "the *Montana-Strate-Atkinson* trilogy," and suggested the Labor Commission should consider whether a "consensual relationship" existed, *id.* at 240–41, we nowhere considered the issue before us today, whether application of *Montana* is required when the activity of the non-Indian occurred on tribal land. Therefore, nothing in *Central Consolidated* precludes our holding today.

jurisdiction over a particular products liability case. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

### III

In sum, the district court erred by requiring fulfillment of the Montana exceptions in this case. The district court's opinion is REVERSED and REMANDED for proceedings consistent with this opinion.