OPINION

This matter is before the Court on a motion requesting the Court to approve a settlement entered into by the parties several years after a final judgment and, pursuant to the settlement agreement, to vacate the opinions the Court entered in the case. The motion is a matter of first impression that implicates such important policy and procedural issues that the Court issues this opinion. Based on the Court’s review, the Court denies the motion.
I.
Ms. Manygoats’ case has been before this Court now on three occasions. On her first visit, this Court on January 14, 2000 upheld a decision of the Navajo Nation Labor Commission (NNLC) that the Navajo Preference in Employment Act (NPEA) applied to her employer, Atkinson Trading Company (ATC), and remanded the issue of whether ATC’s termination of Ms. Manygoats violated the Act. The NNLC subsequently modified its original order only as to the sanctions to apply against ATC. ATC again appealed to this Court.
After oral arguments on the second appeal, but before this Court issued its opinion, ATC resorted to the United States government to address its refusal to submit to Navajo Nation (Nation) jurisdiction, by filing a complaint with the United States District Court. The Navajo Nation Supreme Court issued a second opinion on August 12, 2003, inter alia, affirming NNLC’s jurisdiction and ATC’s violation of the NPEA. On March 17, 2004 the United States District Court entered summary judgment in ATC’s favor, ruling that NNLC did not have jurisdiction over ATC to apply the NPEA. On March 26, 2004 the United States District Court granted ATC’s additional request for declaratory and injunctive relief against the NNLC. The Nation, the NNLC and Ms. Many-goats appealed to the Ninth Circuit Court of Appeals.
While the appeal was pending before the Ninth Circuit of Appeals, the parties negotiated a settlement. The Nation filed a motion on April 6, 2006 for this Court to accept the settlement and attached a “proposed” [1] settlement agreement with the Attorney General’s signature. Generally, the settlement states that ATC will dismiss its federal court challenge to the Nation’s jurisdiction, and that the Nation will neither in the future exert jurisdiction ov< ■■ ATC’s employment activities nor allow others to do the same. The agreement allows ATC to enforce that pledge through litiga tion in Navajo Nation or federal courts to bar any attempted application of the NPEA without any defense of exhaustion of administrative remedies or sovereign immunity from the Nation. The whole agreement is conditional; it would proceed only if the court vacates its opinions and NNLC vacates its orders.
II
As a preliminary matter, the Court assumes, for purposes of the motion that Ms. Manygoats and ATC have agreed to this settlement, though their signatures do not appear on the document. If the parties have, in fact, not entered into a settlement, and only seek to have this Court pre-approve the settlement, the Court do< ■- *763 not conduct pre-clearances of proposed settlements. With this in mind, the Court considers the merits of the motion.
HI
Vacatur of an opinion is not addressed by the rules directly applicable to the Court.[2] The Court is not aware of any case concerning whether prior opinions should be vacated to facilitate a settlement in another government’s courts. Further, the parties do not cite any Navajo law or outside law in support of the motion or as guidance to the Court.
The request implicates important policy issues for the Court, as the opinions are binding statements on Navajo law upholding the sovereignty of the Nation. The Court’s previous opinions in this case confirmed the argument that ATC was subject to the NPEA under Navajo law, and that ATC violated the NPEA in terminating Manygoats without “just cause.” The opinions stated important propositions of Navajo Nation law on jurisdiction over non-Indians and the standard of proof and procedural and substantive requirements of “just cause” terminations under the NPEA, and have been applied in subsequent cases as binding precedent. See Smith v. Navajo Dept. of Head Start, 6 Am. Tribal Law 683, 686, 2005 WL 6233868, *2 (Navajo Sept. 12, 2005); Jackson v. BHP World, Minerals, 5 Am. Tribal Law 446, 451, 2004 WL 5058532, *4 (Navajo 2004); Dale Nicholson Trust v. Chavez, 5 Am. Tribal Law 305, 300-7.1, 2004 WL 5058105, **3-4 (Navajo 2004); Nelson v. Pfizer, 4 Am. Tribal Law 680, 682, 2003 WL 25794136, *2 (Navajo 2003); Peabody Western Coal Co. v. Navajo Nation Labor Commission, 4 Am. Tribal Law 650, 654 n. 1, 2003 WL 25794132, **4-5 n. 1 (Navajo 2003). The Nation’s courts and executive branch officials have relied on these opinions to define the scope of their authority, and public and private employers and employees have relied on them to define their relative responsibilities throughout the Navajo Nation.
As vacatur of these opinions would have a significant effect on Navajo Nation law, lessen the reliability of final judgments and reflect upon the integrity of the judiciary, the Court will scrutinize the facts and equities of each case and determine whether there is an exceptional reason to disrupt our legal system in this way. Cf. U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 28, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); National Union Fire Insurance Co. v. Seafirst Corp., 891 F.2d 762, 769 (9th Cir.1989); Ringsby Truck Lines, hie. v. Western Conference of Teamsters, 686 F.2d 720, 722 (9th Cir.1982). The parties have provided no such exceptional reason. The Court is perplexed that the parties do not provide any explanation of why they ask this Court to wipe out its previous decisions and act as if they were never law, or even upon what basis this Court can ever vacate opinions long after a case is closed. The parties simply assert that vacatur is appropriate, apparently because the agreement requires it. However, the Court *764 notes that the agreement is not limited to settling the present litigation, but attempts to prospectively bind the Navajo public and the Navajo Government. The Court can only assume that the parties believe that it is in their interest to not risk bad precedent in federal case law if the Ninth Circuit Court of Appeals hears their appeal on the merits, and therefore acquiesce to the vacatur to achieve settlement. It also appears that the parties believe that Navajo Courts are obliged to accept settlements and vacate prior judgments because the mere act of a settlement renders the previous appeals moot. As is demonstrated in this case, while parties should settle litigation, the parties must realize that once judgments are made, the litigation is removed from the sole control of the parties.
Under the circumstances of this case, the desire of the parties alone that the previous opinions should be vacated, as expressed in the settlement, is not a sufficient reason to overturn the Court’s interpretation of Navajo law. After having presented many legal arguments about the sovereignty of the Navajo Nation, the public policy that all businesses need to be held accountable under Navajo law, and the continuing need for the NPEA, the Navajo parties now ask, in effect, that this Court reverse the two opinions that affirmed their arguments. The Navajo parties, without explanation, ask for vacatur even after they have obviously and completely abandoned their positions. Ms. Manygoats’ case presented issues of utmost importance to the Nation and every individual Diñé the exercise of the Nation’s inherent sovereignty over all who live or transact business within the exterior boundaries of the Nation and the enforcement of remedial statutory laws addressing employment practices. The public interest in certainty of legal precedent and protection of Navajo sovereignty cannot be cast aside or manipulated by parties based merely on personal economic interest or fear of disagreement by another tribunal. If the courts of the United States government decide that the Nation is without jurisdiction, the Court is certain that the Nation will continue to protect its rightful place in American federalism. The Court will not vacate its previous opinions. Because the opinions will remain as Navajo law, there is no need to remand the matter to the NNLC to consider whether to vacate its previous decisions.
IV
Based on the above, the Court DENIES the motion to accept the settlement agreement and vacate the previous opinions in this case.

. The motion requests the Court to "accept the proposed settlement agreement ... and to replace fthe prior court decisions] with an Order approving the Settlement Agreemeni The signed agreement does not use the word "proposed.”

. Rule 60(c) of the Navajo Rules ol Civil Procedure allows vacatur under certain circumstances, including fraud, mistake, newly discovered evidence, satisfaction of judgment, or "any other reason justifying relief from the enforcement of the judgment." That rule does not directly apply to the Supreme Court, and there is no equivalent rule in the Navajo Rules of Civil Appellate Procedure (NRCAP) or Navajo Rules of Appellate Procedure. However, the Court has at least once ‘‘vacated" a previous opinion upon reconsideration based on NRCAP 19. See Stago v. Wide Ruins, 4 Am. Tribal Law 614, 622, 2002 WL 34461286, *6 (Navajo 2002). That rale allows the Court to "modify” a previous decision by granting a motion for reconsideration, NRCAP 19(c). Rule 19 is not applicable here.